**Celerino CRUZ ANGELES,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 12A02–9912–CR–849.

Court of Appeals of Indiana.

July 16, 2001.

Transfer Denied September 4, 2001.

Brian G. Dekker, O'Brien & Dekker, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Celerino Cruz Angeles appeals his convictions for sexual misconduct with a minor[1] and child molesting.[2] In particular, he claims that the interpreter used during his trial lacked the appropriate qualifications to serve as an expert and failed to properly translate testimony. In addition, he challenges the sufficiency of the evidence and his sentence. We affirm because the interpreter was properly qualified, and whether the interpreter accurately translated testimony is not an issue properly before us. Furthermore, sufficient evidence supports the convictions, and the sentence was not erroneous.

### Facts and Procedural History

Angeles and Riselda, his wife, have four minor daughters: V.A., E .A., Ma.A., Mo.A. The family is originally from Mexico, and Spanish is their native language. In July 1995, the family moved to Frankfort, Indiana. With the exception of E.A., the family moved into a home at 752 Columbia Street in November 1995. They remained there for approximately one year. At that point, the family including E.A. moved to 309 West Wabash Street. They lived there for approximately two years before moving to a house on North Clay Street. Riselda filed for a divorce in November of 1998. The day before she filed for divorce, her daughters informed Riselda that Angeles had been molesting them at night. A Clinton County investigator interviewed the girls at their schools regarding the incidents.

When the family lived on Columbia Street, Ma.A., and Mo.A. shared a bedroom. After Riselda fell asleep, Angeles would enter the girls' bedroom and molest them. Ma.A. testified that Angeles touched her between her legs on her private parts and on her breasts underneath her clothing. She stated that this occurred almost every night. When the family moved to Wabash Street, Angeles continued to touch Ma.A.'s breasts and private parts under her clothing in her bedroom at night. Ma.A. saw Angeles touch Mo.A. three times on her "privates" when they lived on Wabash Street.

---

1. Ind.Code § 35–42–4–9(b)(1).

2. Ind.Code § 35–42–4–3(b).

Angeles also touched Mo.A. between her legs, on her private parts under her clothing every night while the family lived on Columbia Street. Angeles would touch Mo.A. when she was asleep and would leave when she awoke. Angeles continued to touch Mo.A. when they lived on Wabash Street.

Angeles touched V.A. once or twice on her breasts over her clothing when they lived on Columbia Street. He also touched V.A.'s breasts through her clothing while the family lived on Wabash Street. Further, he touched E.A.'s breasts over her clothing eight to twelve times in her bedroom at night when the family lived on Wabash Street.

Angeles was charged with three counts of sexual misconduct with a minor, all Class C felonies and six counts of child molesting as Class C felonies. Angeles did not appear for his trial. Two interpreters were provided for use at trial. One interpreter was to translate for Angeles and the other translator, Renata Rae Harris, was to translate the testimony of Spanish-speaking witnesses. At trial, Mo.A., E.A., and V.A. testified in Spanish, and Harris translated their testimony into English. The trial court swore in Harris before Mo.A. began to testify. After Mo.A. testified, but before E.A. and V.A. testified, Angeles objected to Harris' qualifications. Following the objection, the trial court questioned Harris regarding her qualifications and found her qualified to interpret. Angeles' attorney did not object to the trial court's establishment of Harris' qualifications.

Angeles was convicted of two counts of sexual misconduct with a minor based on his touching of V.A., one count of child molesting based on his touching of E.A., one count of child molesting based on his touching of Mo.A., and one count of child molesting based on his touching of Ma.A.

At the sentencing hearing, the court found several aggravating factors. The aggravators included the ongoing nature of his crimes, that he was in a position of trust with the four victims by virtue of being their father, and that he exhibited a lack of remorse by not appearing for his trial and causing his victims embarrassment when testifying against him. The trial court found one mitigating factor, namely, his lack of a criminal history. The court found that the aggravating factors outweighed the mitigating factors. The court sentenced him to seven years for each of his convictions to be served consecutively with five years suspended. Thus, he was sentenced to thirty years imprisonment.

Angeles filed the Record of Proceedings on April 10, 2000. Angeles included a retranslation of Harris' original translation by a second interpreter, Claudia Samulowitz, in the record. The new translation had not been presented at trial or reviewed by the trial court. The State moved to strike the Record of Proceedings because Angeles failed to present a certified record of the jury trial to the trial court. We granted the motion and remanded to the trial court for certification of the trial transcript. Upon remand, Harris reviewed the tape of the trial and Samulowitz's notations in the record and responded with a document presenting a critique of Samulowitz's review of the translation. The trial court certified the Record of Proceedings as filed including Samulowitz's translation without including Harris' critique.

## Discussion and Decision

Angeles presents four issues for review on appeal. First, he asserts that Harris was not qualified to serve as his interpreter. Second, he claims that Harris improperly translated V.A.'s testimony. Third, he argues that there is insufficient evi-

dence to support his convictions for child molesting of E.A. and sexual misconduct with V.A. Finally, he maintains that his sentence is manifestly unreasonable. We address each argument in turn.

## I. The Qualifications of the Interpreter

■ Angeles contends that the trial court abused its discretion when it found Harris qualified as an expert. In particular, he asserts that Harris was not qualified because she stated she was not bilingual. Mo.A., E.A., and V.A. spoke little English at trial and required the translation services of Harris during the proceedings. Before Mo.A. testified, the trial court swore in Harris. Angeles objected to her qualifications after Mo.A. testified, but before E.A. and V.A. testified. Thus, any error was preserved regarding the translation of E.A. and V.A.'s testimony, but was waived regarding the translation of Mo.A.'s testimony.

Under Indiana Rule of Evidence 604, "An interpreter is subject to the provisions of these rules relating to qualification of an expert and the administration of an oath or affirmation to make a true translation."[3] Qualification of an expert is governed by Indiana Rule of Evidence 702(a), which states in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

In order to qualify as an expert, an interpreter must have "specialized knowledge in the language or particular form of communication sufficient to assist the trier of fact to understand the evidence." 13 ROBERT L. MILLER, INDIANA EVIDENCE § 604.101 at 66 (2d ed.1995).

In this case, the following colloquy highlighted the translator's experience:

> Court: And you have been a teacher at both the high school system and also in the college system of Spanish, is that correct?
>
> Ms. Harris: Yes.
>
> Court: You worked thirty-four years in the Frankfort school system?
>
> Ms. Harris: No.
>
> Court: Thirty-four years?
>
> Ms. Harris: At Western School Corporation in Kokomo.
>
> Court: Sorry. At Western in Kokomo?
>
> Ms. Harris: Right.
>
> Court: Excuse me. In teaching Spanish, is that correct?
>
> Ms. Harris: Right.
>
> Court: And that would include all levels of Spanish?
>
> Ms. Harris: Right.
>
> Court: You also have worked at IU or Indiana University of Kokomo and taught Spanish there—
>
> Ms. Harris: That's true.
>
> Court:—is that correct?
>
> Ms. Harris: Yes.
>
> Court: And you've been to foreign countries where they speak Spanish, is that correct?

**3.** We note that Evid.R. 604 applies only to interpreters
> whose role is to advance the fact-finding process by translating evidence into words the trier of fact can understand. Interpreters also may be used to translate all court proceedings to a party, or to translate com-

munications between a party and counsel. While these roles are no less important than interpreting to the trier of fact, the application of Rule 604 to these proceedings is questionable.

13 ROBERT L. MILLER, INDIANA EVIDENCE § 604.102 at 67 (2d ed.1995).

Ms. Harris: Yes, I have.

Court: And you are fluent in Spanish in both—is that correct?

Ms. Harris: Yes. I am not a bilingual but I am fluent.

Court: Okay. The Court feels under the law that the interpreter is qualified both under the case law, which leaves it to the discretion of the Court, the statutory law, and the rules. All right. The Court's made a ruling.

Record at 204–06. We have long held that where an interpreter is appointed, the manner in which the examination is conducted is largely within the discretion of the trial court. *Diaz v. State*, 444 N.E.2d 340, 342 (Ind.Ct.App.1983). Based on the trial court's examination, the record shows that Harris had thirty-four years of experience teaching Spanish at the high school level. Additionally, she taught Spanish at the college level. She also traveled in Spanish speaking countries. Furthermore, although she indicated that she was not bilingual, she considered herself to be fluent in Spanish. The questions asked by the trial court established that Harris had extensive experience with the Spanish language and felt comfortable with her own ability to translate. Based on the trial court's examination of Harris' experience in this case, there was sufficient evidence to support the trial court's finding that she was qualified to translate. Thus, the trial court did not abuse its discretion in concluding that Harris was qualified.

The issue of qualifying foreign language translators is likely to recur.[4] We think both the defendant's rights and our judicial system would be better served if trial courts have guidelines to employ when appointing translators. First, a trial court should swear in the translator using the oath provided at Indiana Code § 34-45-1-5.[5] Next, the court should consider several factors when determining whether an interpreter has the necessary qualifications. We suggest that trial courts ask the following questions to potential interpreters to evaluate an interpreter's qualifications: (1) Do you have any particular training or credentials as an interpreter? (2) What is your native language? (3) How did you learn English? (4) How did you learn [the foreign language]? (5) What was the highest grade you completed in school? (6) Have you spent any time in the foreign country? (7) Did you formally study either language in school? To what extent? (8) How many times have you interpreted in court? (9) Have you interpreted for this type of hearing or trial before? To what extent? (10) Are you a potential witness in this case? (11) Do you know or work for any of the parties? (12) Do you have any other potential conflicts of interest? (13) Have you had an opportunity to speak with the non-English speaking person informally? Were there any particular communication problems? (14) Are you familiar with the dialect or

---

4. For example, although the need for translators is by no means limited to the Hispanic population, we note that Indiana's Hispanic population alone has grown substantially, from about 99,000 in 1990 to almost 215,000 in 2000. This represents a growth of 116,000 or 117%. *See* Census Redistricting Data for Indiana Released March 9, 2001, at *http:// www.stats.indiana.edu/pl_data/plrelease_march901.html* (last visited June 18, 2001).

5. I.C. § 34-45-1-5 provides the following oath for interpreters:

 Do you solemnly swear (or affirm) that you will justly, truly, and impartially interpret to ____ the oath about to be administered to him (her), and the questions which may be asked him (her), and the answers that he (she) shall give to such questions, relative to the cause now under consideration before this court so help you God (or under the pains and penalties of perjury)?

idiomatic peculiarities of the witnesses? *See Court Interpretation: Model Guides for Policy and Practice in the State Courts* 148 (State Justice Institute 1995) (suggesting that courts ask potential interpreters these questions to establish the qualifications when there is no court testing or screening). Although not an exhaustive list, after considering these types of questions, a trial court will be better able to determine whether or not an interpreter is properly qualified to translate.

## II. The Translation

Next, Angeles asserts that the interpreter inaccurately translated several pieces of testimony. He argues that the erroneous translation denied him a fair trial under Article 1, Section 13 of the Indiana Constitution. The State contends that this claim is not properly before us. We agree with the State.

Angeles included a revised version of the trial transcript in the Record of Proceedings. The revised version consisted of a different translation of the record by Claudia Samulowitz. In order to highlight testimony Samulowitz "considered particularly important to point out," she color-coded her translation, used boldface type for certain portions, and used a larger font in order to highlight parts of the original translation with which she did not agree. Record at 124. In particular, Angeles contends that Harris mistranslated V.A.'s testimony regarding whether Angeles touched her vaginal area.

The State moved to strike the Record of Proceedings because the revised translations had not been certified as part of the record by the trial court. We granted the motion and remanded to the trial court so that the court could determine whether to certify the record. Without holding a hearing or making a factual determination regarding the two translations, the trial court certified the record, with the exception of Harris' response to Samulowitz's translation. There are no findings in the record establishing which translation is correct. The trial court's certification order merely offers both translations as part of the record. Thus, we are unable to determine whether the original translation includes errors. In such cases, when an appeal requires factual determinations based upon evidence not in the record, the proper procedure is to ask that the appeal be suspended or terminated in order that a more thorough record may be developed through post-conviction proceedings under the *Davis/Hatton* procedure.[6] *Attebury v. State*, 703 N.E.2d 175, 178 (Ind.Ct.App. 1998), *reh'g denied.*

Generally, a convicted defendant may only file a post-conviction petition after the disposal of his direct appeal. However, in *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977), the supreme court recognized an exception to this rule of exhaustion. Following *Davis*, an appellate court may grant such a disposition when it finds the following:

(1) that the grounds for relief advanced in appellant's petition have a substantial likelihood of securing appellant relief in the trial court;

(2) that such relief has a substantial likelihood of rendering moot the issues raised on direct appeal and would effect a net savings of judicial time and effort;

(3) that the circumstances of the case are such that undue hardship would result to appellant were he required

---

6. *See Hatton v. State*, 626 N.E.2d 442, 442 (Ind.1993); *Davis v. State*, 267 Ind. 152, 156,

368 N.E.2d 1149, 1151 (1977).

to await completion of his appeal to petition for post-conviction relief.

*Id.* at 1151. Following these guidelines, the appellate court does not decide the petition on the merits. KENNETH M. STROUD, 4A INDIANA PRACTICE § 6.7(b) (2d ed.1990). Rather, it only determines whether the petition should be remanded to the trial court for resolution following an evidentiary hearing in the trial court. *Id.* Then, if the trial court denies the petition, the petitioner may appeal the ruling pursuant to the ordinary rules of appellate procedure. *Id.*

Here, Angeles did not file a petition for post-conviction relief to introduce the re-translation of the court proceedings. Instead, he included a new translation of the trial transcript in the Record of Proceedings. Angeles' claim of incorrect translation rests on factual decisions which can only be reached by examining Samulowitz's retranslation and Harris' original translation and weighing the credibility of the two expert opinions. It is not a proper function of an appellate court to receive and weigh evidence. *Brewster v. State,* 697 N.E.2d 95, 96 (Ind.Ct.App.1998). Because the trial court did not hold a hearing or make a factual determination regarding which translation was correct and Angeles failed to present this argument in a post-conviction proceeding, the issue is not properly before us. Therefore, we are precluded from determining whether the translation violated Angeles' rights under the Indiana Constitution.

### III. Sufficiency of the Evidence

■ Angeles contends that the State failed to present sufficient evidence to support his convictions for child molesting of E.A. and sexual misconduct with a minor, V.A. Specifically, Angeles argues that the State failed to prove that he touched the girls with the intent to arouse or satisfy sexual desires as charged.

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Clark v. State,* 695 N.E.2d 999, 1002 (Ind. Ct.App.1998), *trans. denied.* We consider only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. *Id.* We will affirm if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.*

To convict the defendant of child molesting, a Class C felony, the State must prove that the defendant (1) with a child under fourteen years of age, (2) performed or submitted to any fondling or touching, (3) of either the child or the older person, (4) with intent to arouse or to satisfy the sexual desires of either the child or the older person. Ind.Code § 35–42–4–3(b). Likewise, to convict the defendant of sexual misconduct with a minor, also a Class C felony, the State must prove that the defendant (1) who was at least twenty-one years of age, (2) with a child at least fourteen years of age but less than sixteen years of age, (3) performed or submitted to any fondling or touching, (4) of the child or the older person, (5) with intent to arouse or satisfy the sexual desires of either the child or the older person. Ind. Code § 35–42–4–9(b)(1).

■ The element of intent of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. *Nuerge v. State,* 677 N.E.2d 1043, 1048 (Ind.Ct.App.1997), *trans. denied.* We have found sufficient evidence to support a finding of touching with intent to satisfy sexual desires where a defendant put his arm around the shoulder of a child and let his hand hang, touching her breast, and where he placed his hand on the shoulder

of another child and then on her breast. *See Pedrick v. State,* 593 N.E.2d 1213, 1220 (Ind.Ct.App.1992), *reh'g denied.*

Here, as in *Pedrick,* there was sufficient evidence to justify the inference that Angeles touched the girls for the purpose of satisfying or arousing sexual desires. Specifically, E.A. testified that Angeles entered her bedroom at night and touched her breasts over her t-shirt. Additionally, E.A. testified that Angeles touched her in this way between eight and twelve times. Likewise, V.A. testified that Angeles also touched her breasts through her clothing. Furthermore, Angeles not only touched E.A. and V.A. but also molested their sisters, Mo.A. and Ma.A. These facts are sufficient to support his convictions for child molesting and sexual misconduct.

In conclusion, we note that while Angeles challenges the translation of V.A.'s testimony regarding whether Angeles touched her vagina, we have not considered any of this disputed testimony in reaching our conclusion. Even without this testimony, sufficient evidence exists to support the convictions.[7]

### IV. Sentencing

Angeles contends that the trial court improperly sentenced him to 30 years imprisonment. In sentencing Angeles, the trial court found three aggravating factors and one mitigating factor. The court sentenced Angeles to seven years for each of his five Class C felony convictions and suspended five years of his sentence. The three aggravating factors were: (1) the ongoing nature of his crimes which involved four victims; (2) Angeles' position of trust as the father of his victims; (3) and Angeles' lack of remorse as displayed by his absence at his trial and his victims'

embarrassment in testifying. The court found his lack of a known criminal history as the single mitigating factor. The court concluded that the aggravating factors outweighed the mitigating factor and ordered Angeles' sentences to be served consecutively, with five years suspended for a total sentence of thirty years.

A Class C felony has a presumptive sentence of four years to which four years may be added for aggravating circumstances and two years may be subtracted for mitigating circumstances. Ind.Code § 35–50–2–6. The presumptive sentence in this case would have been twenty years. Each count carries a two-year minimum penalty and an eight-year maximum penalty. Thus, the court here could have imposed a minimum sentence of ten years and a maximum sentence of forty years, if served consecutively.

Angeles argues that the court erred in finding an aggravating circumstance, failed to find a mitigating factor and failed to properly weigh the mitigating and aggravating factors. Finally, he argues that his sentence is manifestly unreasonable. We address each argument in turn.

■■■ Determining the appropriate sentence is within the trial court's discretion, and the trial court will be reversed only upon a showing of a manifest abuse of discretion. *Bacher v. State,* 722 N.E.2d 799, 801 (Ind.2000). The trial court has within its discretion the ability to determine whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances. *Id.* The weighing of aggravating and mitigating factors is also within the trial court's discretion. *Id.*

---

**7.** Angeles attempts to raise an argument that the testimony of E.A. and V.A. is incredibly dubious. However, he fails to provide a cogent argument to support his contention.

Thus, this argument is waived. Ind. Appellate Rule 8.3(A)(7). For current provision, *see* Ind. Appellate Rule 46(A)(8)(a).

### A. Aggravating Factors

 Angeles contends that the court improperly found lack of remorse for failing to appear for his trial as an aggravating factor when he has a right not to attend his trial. A defendant in a non-capital case may waive his right to be present at trial. *Milton v. State*, 588 N.E.2d 523 (Ind.Ct.App.1992). Thus, the lack of remorse for failure to appear at trial is an improper aggravating factor. However, the trial court found two other aggravating factors in this case: the ongoing nature of the crimes against four victims and his position of trust over his victims. Angeles does not challenge the appropriateness of the remaining aggravating factors. Here, we have two aggravating factors to support the sentence. Thus, although the trial court found one improper aggravator, the remaining aggravators are sufficient to support the sentence. *See Garrett v. State*, 714 N.E.2d 618, 623 (Ind.1999) (stating that even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist).

### B. Mitigating Factors

 Next, Angeles asserts that the trial court erred in not finding that a letter written by his victims requesting that Angeles not be imprisoned as a mitigating factor. We note that the trial court found Angeles' lack of a known criminal history as a mitigating factor.

 The finding of mitigating circumstances is within the discretion of the trial court. *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997). An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999). In addition, sentencing recommendations by victims or their representatives "are not mitigating or aggravating circumstances as those terms are used in the sentencing statute." *Brown v. State*, 698 N.E.2d 779, 782 (Ind. 1998) (quoting *Edgecomb v. State*, 673 N.E.2d 1185, 1199 (Ind.1996), *reh'g denied* ). However, the court shall consider such statements by victims in determining what sentence to impose. Ind.Code § 35–38–1–7.1(a)(6).

Here, the record reveals that the letter written by the victims was admitted into evidence during the sentencing hearing. Thus, the trial court considered the letter, but found it not to be a mitigating factor. Given the young ages of the victims, the fact that Angeles is their father, and the nature of the crimes committed against them, we cannot say that the court erred by not finding the wishes expressed in their letter to be a mitigating factor.

### C. Weight Given the Factors

 Angeles also maintains that the trial court improperly weighed the mitigating and aggravating circumstances. A single aggravating circumstance is sufficient to justify an enhancement or the imposition of consecutive sentences. *Williams v. State*, 690 N.E.2d 162, 172 (Ind.1997). In this case, although one of the aggravating circumstances was improper, there were two other valid aggravating circumstances and one mitigating circumstance. Thus, we cannot say that the trial court erred in weighing the mitigating and aggravating circumstances.

### D. Manifestly Unreasonable Sentence

 Finally, Angeles contends that his sentence is manifestly unreasonable. Under Article 7, Section 4 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. However, we will not do so unless the

sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B).[8] We review the trial court's sentence with deference. *Walter v. State*, 727 N.E.2d 443, 449 (Ind.2000). The issue is not whether the sentence is unreasonable in our judgment, but whether it is "clearly, plainly, and obviously" unreasonable. *Id.* (quoting *Echols v. State*, 722 N.E.2d 805, 809 (Ind.2000)).

Here, Angeles was convicted on two counts of sexual misconduct with a minor and three counts of child molesting. All of the convictions were for crimes repeatedly committed against his own daughters. The trial court found several proper aggravating circumstances, including the ongoing nature and frequency of his crimes and the position of trust he occupied over his victims as their father. Based on these aggravating circumstances, we cannot conclude that his sentence is clearly, plainly and obviously unreasonable.

Affirmed.

ROBB, J., and BROOK, J., concur.

---

8. For current provision, *see* Ind. Appellate Rule 7(B).