Larry JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A05–0205–CR–215.

Court of Appeals of Indiana.

April 2, 2003.

Matthew J. Elkin, Deputy Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Larry Johnson appeals his convictions and sentences on two counts of Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk as Class D felonies.[1] Specifically, Johnson argues that the trial court abused its discretion in admitting into evidence a letter from the Social Security Administration denying Johnson's request for disability benefits, testimony from three women detailing their previous sexual relationships with Johnson and their subsequent positive test results for the human immunodeficiency virus (HIV), and testimony that Johnson admitted that he is HIV-positive. Johnson also argues that the State presented insufficient evidence to establish that he is HIV-positive or that he knew that he was HIV-positive when he engaged in sexual relationships with two women. Finally, Johnson argues that the trial court abused its discretion in ordering him to serve consecutive sentences.

Because the letter from the Social Security Administration was not introduced for the truth of the matter asserted, we find that it did not constitute hearsay and was admissible. Further, the testimony of Johnson's previous sexual partners and his admission were properly admitted to es-

---

1. Ind.Code §§ 16–41–7–1, 35–42–1–9.

tablish that Johnson was HIV-positive and knew that he was positive for HIV. Also, based on the testimony of Johnson's previous sexual partners concerning their HIV status and their confrontations with Johnson and Johnson's admissions to his HIV status, we find that there is sufficient evidence to support Johnson's convictions. Finally, because the trial court found two valid aggravating factors, we affirm the trial court's imposition of consecutive sentences.

### Facts and Procedural History

The facts most favorable to the judgment show that during a six-month period in 1993, Johnson had sexual intercourse with C.B. Starting in the summer of 1994, Johnson then had sexual intercourse with Y.V., and his sexual relationship with Y.V. continued off and on until 1998. Johnson and Y.V. have one child together; Y.V. eventually tested positive for HIV. In 1995, Johnson also had a one-time sexual encounter with T.D. In 1996, both T.D. and C.B. tested positive for HIV. In 1998, T.D. confronted Johnson and accused him of infecting her; Johnson denied it. Tr. p. 161.

In January 1999, L.W. performed oral sex on Johnson and Johnson penetrated L.W.'s vagina. During the sexual encounter, Johnson did not inform L.W. that he was HIV-positive. In February 1999, Johnson began a sexual relationship with K.J. In late February or early March of 1999, L.W. and K.J. confronted Johnson after K.J. heard rumors that Johnson was HIV-positive. Johnson denied that he was HIV-positive.

After this initial confrontation, K.J. and Johnson continued their sexual relationship, and they have one child together. In April or May of 1999, Johnson told C.B.

that he finally was tested and that he was HIV-positive. Tr. p. 170–71. After his admission To C.B., Johnson continued his sexual relationship with K.J. without warning her of his HIV status. In August or September of 1999, K.J. found a social security document that indicated that Johnson was HIV-positive. When K.J. confronted him with the document, Johnson admitted to her that he was HIV-positive. On October 2, 2000, K.J. learned that she was HIV-positive.

On February 28, 2001, the State charged Johnson with four counts of Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk as Class D felonies. The first three counts concerned Johnson's sexual relationship with K.J., and the last count concerned Johnson's sexual encounter with L.W. After the close of evidence at Johnson's jury trial, the trial court issued directed verdicts of not guilty on Counts I and II because these two counts involved Johnson's sexual encounters with K.J. after she learned of his HIV status. The jury then found Johnson guilty on the remaining count involving his sexual relationship with K.J. and the one count involving his sexual encounter with L.W. The trial court sentenced Johnson to two consecutive three-year sentences with one year suspended on each count for a total executed sentence of four years and two years on probation. This appeal ensued.

### Discussion and Decision

Johnson raises a number of issues on appeal challenging the admission of evidence at trial, the sufficiency of that evidence, and the appropriateness of his consecutive sentences. Johnson asserts that the trial court abused its discretion in admitting a letter from the Social Security Administration that constituted hearsay.

Johnson also asserts that the trial court abused its discretion in admitting testimony from C.B., Y.V., and T.D. in which they detailed their previous sexual relationships with Johnson and in admitting testimony of Johnson's admissions that he is HIV-positive when the *corpus delicti* of his crimes was not established. Johnson then argues that the State presented insufficient evidence to establish that Johnson is HIV-positive or that he knew of his condition at the time of his sexual encounters with K.J. and L.W. Finally, Johnson asserts that the trial court abused its discretion in sentencing him to consecutive sentences because it failed to explain its sentence. We address each argument in turn.

### I. Admission of Evidence

 Johnson contends that the trial court abused it discretion when it admitted into evidence a letter from the Social Security Administration, the testimony of three women detailing their previous sexual relationships with Johnson and their subsequent positive test results for HIV, and the testimony of two women stating that Johnson admitted to them that he is HIV-positive. The admissibility of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Rhodes v. State*, 771 N.E.2d 1246, 1251 (Ind.Ct.App.2002), *trans. denied.* In determining admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Id.*

### A. Letter

 Johnson asserts that the trial court abused its discretion in admitting a letter from the Social Security Administration denying social security benefits to Johnson because the letter contained inadmissible hearsay. The letter provides that Johnson was denied benefits on December 11, 1998, after he claimed that he was disabled because he is HIV-positive. Exhibit 1. The letter also contained information detailing the names of doctors who had performed medical services for Johnson and the dates that they had forwarded the documentation of those services to the Social Security Administration. Exhibit 1.

Johnson claims that the letter was inadmissible hearsay because it contains information gathered by the Social Security Administrators from various doctors, all of whom Johnson was unable to cross-examine, and that the letter was admitted to establish that Johnson is HIV-positive and that he knew of his condition before his sexual encounters with L.W. and K.J. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Bufkin v. State*, 700 N.E.2d 1147, 1150 (Ind.1998) (quoting Ind. Evidence Rule 801(c)). A "statement" is defined as an oral or written assertion. Evid. R. 801(a)(1). A statement is not hearsay if offered for another purpose. *Bufkin*, 700 N.E.2d at 1150; *In re A.C.*, 770 N.E.2d 947, 951 (Ind.Ct.App.2002).

While the State concedes that the letter would have been inadmissible if it had been introduced to prove that Johnson knew he was HIV-positive, that was not the purpose given for the letter's introduction. After Johnson objected to the admission of the social security letter on hearsay grounds at trial, the State argued that the letter was not being offered for the truth of the matter asserted within;

but rather, it was offered to explain what prompted K.J. to confront Johnson a second time about his HIV status. Tr. p. 124. In admitting the letter into evidence, the trial court issued the following decision and instruction to the jury:

> Well for what is in it. I'm gonna sustain, but for his purpose I'm going to allow this over your objection, and I will instruct the jury that when you examine this exhibit, you are to look at it only for the purpose of determining what she saw when she saw it, and what she did with it, not for the content. You cannot accept the content as truth.

Tr. p. 125.

We agree with the trial court's decision and its admonishment to the jury. At trial, K.J. testified that after she found this letter, she confronted Johnson with it, and he admitted that he is HIV-positive. Regardless of the truth of the matter asserted in the social security letter, the letter was admissible because its very existence explains the reason for the confrontation between K.J. and Johnson. Because the letter was not being offered for the truth of the matter asserted within and the trial court specifically admonished the jury to consider the letter only for the purpose of explaining what prompted K.J. to confront Johnson about his HIV status, we conclude that the letter was not hearsay and that the trial court did not abuse its discretion in admitting it into evidence.

### B. Testimony of Previous Sexual Partners

Johnson also argues that the trial court abused its discretion in admitting the testimony of Y.V., T.D., and C.B. detailing their prior sexual relationships with Johnson and their subsequent positive test results for HIV. Johnson argues that the women's testimony should have been excluded under Indiana Evidence Rule 404(b) because it is evidence of prior bad acts that only showed Johnson's "propensity to have sex with people." Appellant's Br. p. 17. Generally, evidence of a person's sexual preference or propensities is considered character evidence. *Utley v. State*, 699 N.E.2d 723, 728 (Ind.Ct.App. 1998), *trans. denied.* Indiana Evidence Rule 404(b) provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *See also Rhodes*, 771 N.E.2d at 1251. In evaluating the admissibility of evidence under Rule 404(b), a trial court must, "(1) decide if the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Hicks v. State*, 690 N.E.2d 215, 219 (Ind.1997). "In short, if the evidence bears on some issue other than criminal propensity and clears the balancing hurdle of Rule 403, it is admissible." *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind.2000).

Johnson is correct that his prior sexual history would be inadmissible if it was introduced in order to establish the inference that he must have engaged in sexual relationships with L.W. and K.J. because he had engaged in sexual relationships with several other women in the past. However, this evidence was introduced to establish the inference that Johnson was HIV-positive and knew that he was positive for HIV at the time he engaged in

sexual relationships with L.W. and K.J. At trial, Y.V. testified that she had sexual intercourse with Johnson off and on between 1994 and 1998 and that she tested HIV-positive in 1999. C.B. testified that she had sexual intercourse with Johnson in 1993 and tested HIV-positive in 1996, and T.D. testified that she had sexual intercourse with Johnson in 1995 and tested HIV-positive in 1996. In addition, T.D. testified that she confronted Johnson in 1998 and accused him of infecting her, which Johnson denied. However, C.B. testified that in April or May of 1999, Johnson told her that he finally was tested and that he was HIV-positive. Tr. p. 171.

The testimony of C.B., Y.V., and T.D. detailing their sexual relationships with Johnson and their HIV status was admissible to establish Johnson's HIV status. In addition, the testimony from C.B. and T.D. concerning their confrontations with Johnson was admissible under the knowledge exception listed in Rule 404(b) to establish Johnson's knowledge of his HIV status. *See Fuller v. State,* 674 N.E.2d 576, 578 (Ind.Ct.App.1996) (finding that evidence of dead and injured dogs on the defendant's property was admissible under 404(b) to prove defendant's knowledge that dog fighting was being conducted on his property). Evidence of the HIV status of Johnson's sexual partners as well as his knowledge of their HIV status and his own status was highly probative and relevant as to whether he is HIV-positive and knew that he was positive at the time he engaged in sexual relationships with L.W. and K.J. As Johnson's HIV status and his knowledge of his status were two elements that the State had to establish for a conviction, we find that the probative value of the testimony outweighed any prejudicial effect from its admission. Therefore, we find that the testimony of the three women was admissible.

## C. Johnson's Admission

 Johnson also argues that his admission to C.B. and K.J. that he is HIV-positive is inadmissible because the State never established the *corpus delicti.* The *corpus delicti* requirement seeks to prevent the admission into evidence of a confession by a defendant to a crime that never occurred. *Regan v. State,* 590 N.E.2d 640, 643 (Ind.Ct.App.1992).

> In Indiana, a crime may not be proven based solely on a confession, and admission of a confession requires some independent evidence of the crime including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct. However, this evidence need not prove that a crime was committed beyond a reasonable doubt, but merely "provide an inference that a crime was committed."

*Workman v. State,* 716 N.E.2d 445, 447–48 (Ind.1999) (quoting *Stevens v. State,* 691 N.E.2d 412, 425 (Ind.1997), *reh'g denied* ). The State is also not required to prove the *corpus delicti* by independent evidence prior to the admission of a confession, provided the totality of independent evidence presented at trial establishes it. *McManus v. State,* 541 N.E.2d 538, 539–40 (Ind.1989). Finally, the inference of a crime may be established by circumstantial evidence. *Workman,* 716 N.E.2d at 448.

Based on the totality of the evidence, we determine that there is independent evidence of a crime. Four women testified that they had engaged in sexual intercourse with Johnson and later tested positive for HIV. Two of those women testified that they confronted Johnson about their HIV status before the time that he engaged in a sexual relationship with L.W.

and K.J., and L.W. and K.J. testified that Johnson engaged in sexual activity with them without telling them that he was HIV-positive. Based on this evidence there is an inference that Johnson committed the crime of Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk. Therefore, it was proper for the trial court to admit into evidence the testimony of C.B. and K.J. detailing Johnson's admissions to them that he is HIV-positive because there is evidence of a crime independent of Johnson's admissions.

## II. Sufficiency of the Evidence

 Johnson argues that there is insufficient evidence to sustain his two convictions for Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk as Class D felonies. Specifically, Johnson asserts that there is insufficient evidence to establish that he is HIV-positive or that he knew he was HIV-positive at the time he engaged in a sexual relationship with L.W. and K.J. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Cruz Angeles v. State,* 751 N.E.2d 790, 797 (Ind.Ct.App. 2001), *trans. denied.* We consider only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. *Id.* We will affirm if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.*

In defining the crime of Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk, Indiana Code § 35–42–1–9 provides:

(a) Except as provided in this section, a person who recklessly violates or fails to comply with IC 16–41–7 commits a Class B misdemeanor.

(b) A person who knowingly or intentionally violates or fails to comply with IC 16–41–7–1 commits a Class D felony.

(c) Each day a violation described in this section continues constitutes a separate offense.

In turn, Indiana Code § 16–41–7–1 provides

(a) This section applies to the following dangerous communicable diseases:

(1) Acquired immune deficiency syndrome (AIDS).

(2) Human immunodeficiency virus (HIV).

(3) Hepatitis B.

(b) As used in this section, "high risk activity" means sexual or needle sharing contact that has been demonstrated epidemiologically to transmit a dangerous communicable disease described in subsection (a).

(c) As used in this section, "person at risk" means:

(1) past and present sexual or needle sharing partners who may have engaged in high risk activity; or

(2) sexual or needle sharing partners before engaging in high risk activity;

with the carrier of a dangerous communicable disease described in subsection (a).

(d) Carriers who know of their status as a carrier of a dangerous communicable disease described in subsection (a) have a duty to warn or cause to be warned by a third party a person at risk of the following:

(1) The carrier's disease status.

(2) The need to seek health care such as counseling and testing.

Thus, in order to convict Johnson of Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk as a Class D felony, the State had to establish that Johnson (1) is HIV-positive, (2) knew he was HIV-positive, (3) and knowingly or intentionally, (4) engaged with a partner in sexual contact that has been demonstrated epidemiologically to transmit HIV, (5) while failing to warn the partner of his HIV status and the need to seek health care.

In attacking the sufficiency of the evidence, Johnson argues only that there is insufficient evidence to establish that he is HIV-positive and that he knew he was HIV-positive at the time of his sexual encounters with L.W. and K.J. Even though Johnson does attack the sufficiency of the evidence supporting the other elements, we note that K.J. testified that she began a sexual relationship with Johnson in February of 1999 and that Johnson did not tell her that he was HIV-positive until August of 1999. With regard to the count involving L.W., L.W. testified that in January of 1999, she performed oral sex on Johnson, that he penetrated her vagina with his penis, and that he never told her that he was HIV-positive. Therefore, we find that Johnson engaged in sexual contact with K.J. and L.W. without warning them of his HIV status.

As to the element of Johnson's HIV status, K.J. testified that Johnson told her that he was HIV-positive in August of 1999, and C.B. testified that Johnson told her that he was HIV-positive in April or May of 1999. In addition, C.B., K.J., Y.V., and T.D. all testified that they tested HIV-positive after engaging in a sexual relationship with Johnson, indicating that Johnson infected them and that Johnson could have been HIV-positive at least as early as 1993, the date of his sexual relationship with C.B. Based on these facts, we find that there was sufficient evidence to establish that Johnson was HIV-positive at the time that he engaged in sexual contact with L.W. and K.J.

With regard to Johnson's knowledge of his HIV status, C.B. testified that Johnson told her that he knew he was HIV-positive in April or May of 1999. In April and May of 1999, Johnson engaged in a sexual relationship with K.J. that continued through his revelation to her in August of 1999 of his HIV status. Therefore, we find that there was sufficient evidence to establish that Johnson knew of his HIV status at the time that he engaged in a sexual relationship with K.J. In addition, T.D. and C.B. testified that they tested HIV-positive in 1996, and T.D. further testified that she confronted Johnson in 1998, accusing him of infecting her. Based on the facts that T.D. and C.B. tested HIV-positive as early as 1996, T.D. confronted Johnson about this in 1998, and Johnson admitted to another woman in April or May of 1999 that he was HIV positive, we find that there was sufficient evidence for the jury to reasonably infer that Johnson also knew that he was HIV-positive in January of 1999 when he engaged in a sexual encounter with L.W. Thus, we find that sufficient evidence of probative value exists to support Johnson's two convictions for Failure of Carriers of Dangerous Communicable Diseases to Warn Persons at Risk as Class D felonies.

### III. Consecutive Sentences

 Finally, Johnson argues that the trial court abused its discretion in imposing consecutive sentences for his convictions. It is well established that sentencing decisions lie within the discretion of the trial court including the decision to

enhance a presumptive sentence or to impose consecutive sentences. *Echols v. State,* 722 N.E.2d 805, 808 (Ind.2000). Indiana Code § 35–38–1–7.1 sets forth aggravating and mitigating circumstances a trial court may consider in deciding whether to deviate from a presumptive sentence or to impose consecutive sentences. *Id.* When the trial court exercises its discretionary authority to impose enhanced and/or consecutive sentences, the trial court must enter, on the record, a statement which (1) identifies all of the significant mitigating and aggravating circumstances; (2) states the specific reason why each circumstance is considered to be mitigating or aggravating; and (3) shows that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances. *Becker v. State,* 695 N.E.2d 968, 974 (Ind.Ct.App.1998); *see also Ortiz v. State,* 766 N.E.2d 370, 377 (Ind.2002). As with sentence enhancement, even a single aggravating circumstance may support the imposition of consecutive sentences. *Ajabu v. State,* 722 N.E.2d 339, 344 (Ind.2000).

In sentencing Johnson to two consecutive three-year sentences with one year suspended on each count, the trial court made the following statement regarding aggravating and mitigating factors:

> The Court finds the following aggravating factors after having considered all of the statutory requirements. First of all, I consider Mr. Johnson's prior record, and while not extensive, he does

have a prior record .... the reason that is an aggravating factor is that it does show a propensity for criminal behavior. The second aggravating factor is the number of offenses or stated differently, as the State just stated, the number of people who have been affected. And the reason for this to be an aggravating factor is primarily the possibility that these children could have been infected. And apparently that meant nothing to Mr. Johnson. I find no mitigating factors.

Tr. p. 209. Johnson now argues that this sentencing statement is insufficient because the trial court found that Johnson's criminal history is not extensive and therefore it should have balanced out as neutral and because the trial court did not identify any children or explain how Johnson's conduct could have infected them. We disagree.

While the trial court did not recite the incidents comprising Johnson's criminal history, we find that the trial court's statements regarding the relative inextensiveness of Johnson's criminal history indicate the court's awareness of the individual incidents that comprised the history.[2] *See Battles v. State,* 688 N.E.2d 1230, 1235 (Ind.1997) (finding that statements regarding extensiveness of the defendant's criminal history demonstrated the trial court's awareness of the individual incidents that comprised the defendant's criminal history). In addition, the trial court's statement that Johnson's criminal history shows a propensity for criminal behavior explains why the court considered the

---

**2.** While the trial court and all the parties referenced the pre-sentence investigation report at Johnson's sentencing hearing, we note that Johnson failed to include in his appeal a copy of the pre-sentence investigation report.

Therefore, we are unable to look to Johnson's pre-sentence investigation report to determine what crimes made up Johnson's criminal history.

criminal history to be an aggravating factor. Contrary to Johnson's assertion, even though the trial court found that Johnson's criminal record was not extensive, the trial court was still free to find that Johnson's criminal record constituted an aggravating factor. We have consistently held that a defendant's history of criminal activity is sufficient to support an enhanced sentence. *Culver v. State*, 727 N.E.2d 1062, 1072 (Ind.2000), *reh'g denied.*

 As to the second aggravating factor, the number of people affected by Johnson's conduct and his lack of concern, we find that there was testimony at trial that Johnson fathered children with Y.V. and K.J. As the children of HIV-positive mothers who were infected by Johnson, Johnson's children also had the possibility of being infected with HIV. The trial court may find the nature and circumstances of the offense to be an aggravating circumstance. *Lemos v. State*, 746 N.E.2d 972, 975 (Ind.2001). Therefore, we conclude that the trial court identified two proper aggravating factors, and because the trial court did not find and Johnson does not

identify any mitigating factors, we conclude that the trial court acted within its discretion in ordering Johnson to serve his sentences consecutively.

Judgment affirmed.

NAJAM, J., concurs.

BROOK, C.J., dissents with separate opinion.

BROOK, Chief Judge, dissenting.

The majority correctly observes that being HIV-positive is not a crime. Under Indiana Code Sections 35–42–1–9 and 16–41–7–1, neither is it a crime for a person to infect another person with HIV. In my view, to convict Johnson of a crime under these statutes, the State was required to establish beyond a reasonable doubt that he (1) was a carrier of HIV, (2) actually knew of his status as a carrier of HIV, and (3a) knowingly failed to warn or cause to be warned by a third party (4) a person at risk (3b) of his disease status and the need to seek health care such as counseling and testing.[1] *See* Ind.Code §§ 35–42–1–9, 16–41–7–1. Assuming, arguendo, that the

---

1. I respectfully disagree in several respects with the majority's formulation of the essential elements of the crime at issue. For instance, the majority would require the State to establish that Johnson is and knew that he is "HIV-positive[.]" Slip op. at 12. Indiana Code Section 16–41–7–1, however, specifically refers to "carriers" of dangerous communicable diseases and knowledge of one's carrier "status." For purposes of this statute, a "carrier" is defined as "a person who has: (1) tuberculosis in a communicable stage; or (2) another dangerous communicable disease." Ind.Code § 16–18–2–49. The majority would also require the State to establish that Johnson "knowingly or intentionally ... engaged with a partner in sexual contact that has been demonstrated epidemiologically to transmit HIV[.]" Slip op. at 12. Under Indiana Code Sections 35–42–1–9 and 16–41–7–1, Johnson's intent with respect to engaging in sexual

contact is irrelevant; the question is whether he knowingly or intentionally failed to warn "persons at risk" (i.e., past, present, and future "high risk activity" sexual partners) of his HIV carrier status and the need to seek health care.

My disagreement with the majority regarding the essential elements of the crime perhaps reflects the unwieldiness of employing Indiana Code Section 16–41–7–1 as a criminal statute, as opposed to its original intended use as a public health statute. The record suggests that the State was understandably flummoxed by the awkward combination of the applicable statutes in prosecuting Johnson. *See, e.g.*, Appellant's App. at 3 (charging Johnson as follows: "during 1999 at or near 125 W. Markland in Howard County, State of Indiana, Larry E. Johnson did knowingly or intentionally violate or fail to comply with the

State established that K.J. and L.W. were persons at risk, it failed to establish with competent evidence that Johnson was a carrier of HIV and that he actually knew of his HIV carrier status.

At most, the testimony of C.B., Y.V., T.D., and K.J. regarding their positive HIV test results is circumstantial evidence that Johnson was a carrier of HIV,[2] and T.D.'s testimony that she accused Johnson of infecting her with HIV is evidence that Johnson *reasonably should have known* that he was a carrier of HIV. It is important to note, however, that Indiana Code Section 16–41–7–1 does not impose a duty to warn on persons who "reasonably should know" that they are carriers of a dangerous communicable disease. As we explained in *Herron v. State*, 729 N.E.2d 1008 (Ind.Ct.App.2000), *trans. denied,*

> requirements of I.C. 16–41–7–1, to-wit: failure to warn a person at risk of contracting HIV/AIDS, contrary to the form of the statutes in such cases made and provided"); Tr. at 102 (explaining in opening statement, "[T]he State basically has to prove these things: that in 1999 Mr. Johnson had the HIV virus; second, that he had unprotected sex with [K.J.] and [L.W.]; and third, that he didn't tell them. Those are the three elements of this crime.").

> 2. The testimony of Y.V., T.D., and C.B. is less than compelling in this regard, as they did not state that they engaged in unprotected sex with Johnson. It is also worth noting that although T.D. testified that she had sex with Johnson once in 1995 and tested positive for HIV in 1996, there is no competent evidence that her other sexual partners did not have HIV. *See* Tr. at 160–65. Additionally, C.B. testified that she had sex with Johnson six to ten times starting in 1993, that she tested positive for HIV in 1996, and that none of her other sexual partners between 1993 and the date of her HIV test told her that they were HIV-positive. *See id.* at 169–72, 333 N.E.2d 871. As Johnson's counsel remarked in closing argument, "I find that very odd that we would put witnesses on to say well the other person I've been with or the other persons I've been with have never said they had

[I]t is just as important to recognize what a statute does not say as it is to recognize what it does say. A court may not read into a statute that which is not the expressed intent of the legislature. Criminal statutes cannot be enlarged by construction, implication, or intendment beyond the fair meaning of the language used. Moreover, criminal statutes are strictly construed against the State. Even though an act may fall within the spirit of the statute, it will not constitute a crime unless it is also within the words of the statute.

*Id.* at 1010 (citations omitted). I believe that Indiana Code Section 16–41–7–1 plainly requires the State to establish that a defendant *actually knew* that he is a carrier of a dangerous communicable disease.

> [HIV], is that proof that they don't?" *Id.* at 199, 333 N.E.2d 871.

> In any event, I believe that circumstantial evidence of a defendant's carrier status (such as the applicable testimony of Johnson's sexual partners in the instant case) is irrelevant and therefore inadmissible in a prosecution for failure to warn persons at risk under Indiana Code Section 35–42–1–9. *See* Ind. Evidence Rule 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence") (emphasis added); Ind. Evidence Rule 402 (providing in relevant part, "Evidence which is not relevant is not admissible."). Like a person's blood alcohol level, a person's carrier status is a medical fact that cannot be established with circumstantial evidence. Nothing would prohibit a prosecutor, however, from using circumstantial evidence of a defendant's carrier status as a basis for procuring a search warrant for a blood sample or a subpoena duces tecum for medical test results. Of course, a defendant may simply admit to his carrier status, but such an admission might run afoul of the corpus delicti requirement and therefore be inadmissible at trial.

Unless the State could establish with competent evidence that Johnson was a carrier of HIV and actually knew of his carrier status, it could not establish that he committed the charged crimes. The only evidence in this regard consists of the letter from the Social Security Administration, which was admitted solely for another purpose, and his admissions to C.B. and K.J. that he was "HIV-positive." The majority concludes that these admissions do not run afoul of the corpus delicti requirement and that they were properly admitted at trial. I respectfully disagree.

With respect to the corpus delicti requirement, this court has stated that

[t]he reason for requiring evidence of a crime independent of a defendant's extrajudicial confession is to avoid the risk of convicting a defendant for a crime to which he confessed, but which never in fact occurred.

.... A confession must include all essential elements of the crime, whereas an admission merely admits some fact which tends to connect the defendant with the alleged offense.... However, the distinction is immaterial to issues of corpus delicti since our case law applies the corpus delicti requirement to the introduction of admissions as well as confessions.

Indiana case law has consistently held that a defendant's out-of-court admission or confession is not properly admitted unless there is independent proof of the corpus delicti, in that, the evidence aside from the admission or confession establishes that the specific crime charged was committed by someone.

*Parsons v. State,* 166 Ind.App. 152, 155–56, 333 N.E.2d 871, 873 (1975) (citations omitted). Aside from Johnson's admissions, there is no evidence that he actually knew of his HIV carrier status and therefore no independent proof that the specific crimes charged were committed. Accordingly, I must conclude that the trial court abused its discretion in admitting C.B.'s and K.J.'s testimony regarding Johnson's admissions and that his convictions therefore cannot stand. Johnson's actions might be considered extremely callous and contemptible, but absent competent evidence that he was a carrier of HIV and actually knew of his carrier status, they cannot be considered criminal under the applicable statutes as they are currently written.[3] Therefore, I respectfully dissent.

---

**3.** In other cases, the State might be able to prove a defendant's carrier status and actual knowledge of his status by other means. *See, e.g.,* Ind.Code § 16–41–7–3(e) (waiving statutory physician-patient privilege for a patient with a dangerous communicable disease regarding "information provided about a patient's noncompliant behavior in an investigation or action under this chapter").