Saba **TESFAMARIAM**, Appellant–
Respondent,

v.

Moghes **WOLDENHAIMANOT**,
Appellee–Petitioner.

No. 49A02–1009–DR–1050.

Court of Appeals of Indiana.

Oct. 4, 2011.

Chad D. Wuertz, Indianapolis, IN, Attorney for Appellant.

Jana K. Strain, Geiger Conrad & Head, LLP, Indianapolis, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Respondent, Saba Tesfamariam (Mother), appeals the trial court's Decree of Dissolution of Marriage, in which the trial court awarded Appellee–Petitioner, Moghes Woldehaimanot (Father), full custody of their minor children.

We affirm.

*ISSUE*

Mother raises two issues on appeal, which we consolidate and restate as the following issue: Whether the trial court abused its discretion in failing to ensure that the courtroom interpreter was properly qualified and in failing to administer the required oath to the interpreter.

*FACTS AND PROCEDURAL HISTORY*

Mother and Father are natives of Africa and their native language is Tigrinya, which is spoken in central Eritrea and in the Tigray region of Ethiopia. Mother has been in the United States since 1987 and is a U.S. citizen, but she does not speak English fluently. At the time of the hearing that is the subject of this appeal, she was taking English classes at a local high school. Father came to the United States in 1995 and speaks English fluently enough to communicate without an interpreter.

Mother and Father married on January 7, 2002, and had two children together— one born on May 3, 2005, and one born on March 10, 2007. On March 11, 2009, Father filed a verified petition for dissolution of marriage and requested a hearing on provisional orders. On June 24, 2009, the trial court approved a preliminary order, entered by agreement of the parties, that established joint custody of the children with Mother having primary physical custody. In its Order, the trial court awarded Mother primary physical custody of the children and Father parenting time. The trial court also ordered Father to pay $115.66 per week in child support and to obtain health insurance for the children through his employer.

Following the Preliminary Order, Mother began taking the children to a babysitter who spoke neither English nor Tigrinya and was not a registered babysitter. Father requested parenting time, but Mother used the babysitter instead of making the children available to Father for parenting time. Father also attempted to obtain health insurance for the children through his employer but was hindered because Mother did not provide the children's birth certificates or social security numbers that were necessary for him to complete the applications.

On September 29, 2009, Father filed a petition requesting emergency custody of the children, and on October 7, 2009, the trial court conducted a hearing on his petition. In its subsequent Order, the trial court found that Mother had not made the children available for parenting time with Father as required by the trial court's June 24 Order. The trial court retained joint legal custody with Mother having primary physical custody, but established specific dates and times for Father's parenting time with the children. The trial court also required each parent to offer the other parent the opportunity to provide care for the children before hiring a babysitter.

On March 17, 2010, Mother requested a final hearing regarding Father's Petition for Dissolution of Marriage, as well as for a translator to be present at the hearing. On May 10, 2010, the trial court held the hearing and utilized the translation services of Language Line, a telephone interpretation service approved and funded by the Indiana Supreme Court. At the conclusion of the hearing, the trial court took the matter under advisement and, on July 2, 2010, entered a decree of dissolution of marriage. Among other provisions, the Decree awarded Father sole legal and physical custody of the children, with Mother receiving parenting time, and required Mother to pay Father $75.00 per week in child support.

Mother now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Mother's primary contention is that the trial court denied her due process because it failed to administer an oath to her interpreter or to ensure that her interpreter was properly qualified as an expert. This court has previously addressed the question of whether a trial court must administer an oath to an interpreter or establish an interpreter's qualifications in cases concerning criminal defendants; however, we have never addressed the question of whether a trial court must take the same steps in a civil action. Based on a review of our case law, we find that many of the due process concerns relevant in a criminal trial are relevant to the case at hand. In fact, we have previously noted that "[i]t is well settled that the right to raise one's children is an essential, basic right, more precious than property rights, within the protection of the [Due Process Clause of the] Fourteenth Amendment to the U.S. Constitution." *In re Adoption of D.C.*, 887 N.E.2d 950, 959 (Ind.Ct.App.2008). Accordingly, we will draw extensively from our criminal jurisprudence in order to analyze this issue.

In Indiana, the use of an interpreter to translate court proceedings to a non-English speaking party is mandated by case law. *Mariscal v. State*, 687 N.E.2d 378, 382 (Ind.Ct.App.1997), *trans. denied.* As such, we have recognized that the denial of an interpreter to a non-English speaking criminal defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

The issue in this case, though, is not whether the trial court failed to provide an interpreter, but whether the trial court effectively denied Mother an interpreter by failing to follow the procedural requirements to establish that her interpreter was qualified. Evidence Rule 604 states that "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation." Correspondingly, in *Mariscal*, we held that it is necessary for a trial court to establish both the qualifications of an interpreter and administer an oath to the interpreter to take an accurate translation. *Mariscal*, 687 N.E.2d at 382. We also concluded that Evidence Rule 604 applies to instances in which an interpreter translates proceedings to a party, in addition to instances in which an interpreter functions to assist the trier of fact in understanding the evidence. *Id.*

In regards to the qualifications of an expert, we have long held that "where an interpreter is appointed, the manner in which the examination is conducted is largely within the discretion of the trial court." *Cruz Angeles v. State*, 751 N.E.2d 790, 795 (Ind.Ct.App.2001), *trans. denied.* In *Cruz Angeles*, though, we suggested certain questions that a trial court could

ask to qualify an expert, including the following:

(1) Do you have any particular training or credentials as an interpreter? (2) What is your native language? (3) How did you learn English? (4) How did you learn [the foreign language]? (5) What was the highest grade you completed in school? (6) Have you spent any time in the foreign county? (7) Did you formally study either language in school? To what extent? (8) How many times have you interpreted in court? (9) Have you interpreted for this type of hearing or trial before? To what extent? (10) Are you a potential witness in this case? (11) Do you know or work for any of the parties? (12) Do you have any other potential conflicts of interest? (13) Have you had an opportunity to speak with the non-English speaking person informally? Were there any particular communication problems? (14) Are you familiar with the dialect or idiomatic particularities of the witness?

*Id.* at 795–96. We noted that this list was not exhaustive but should provide a guideline of potential questions for a trial court to use to determine whether or not an interpreter is properly qualified. *Id.* at 796.

■ On appeal, because we have noted that the manner in which an examination of an interpreter occurs is discretionary, we will review the trial court's examination under an abuse of discretion standard. *See id.* at 795; *see also Clark v. State,* 580 N.E.2d 708, 712 (Ind.Ct.App.1991). A trial court has abused its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Gomez v. Gomez,* 887 N.E.2d 977, 982 (Ind.Ct.App.2008).

■ Here, we conclude that the trial court abused its discretion by failing to establish that Mother's interpreter was qualified and by failing to administer an oath to her interpreter to provide an accurate translation. As the case law above illustrates, both of these actions are necessary in order to protect a party's Due Process rights. Also, because the Due Process implications in this case are substantial, we find that it is appropriate to require the same procedural safeguards here as in criminal cases. It is apparent from the record that the trial court asked Mother whether or not she could hear the interpreter, but did not otherwise address the interpreter's qualifications or administer an oath. Therefore, we determine that the trial court abused its discretion.

■ Father does not dispute that the trial court failed to administer an oath or address the interpreter's qualifications, but he does argue that Mother waived her objections to the interpreter when she failed to object to the errors at trial. In response, Mother asserts that the trial court's errors were fundamental and not subject to waiver.

■ The general rule in Indiana is that matters not raised in the trial court may not be raised in an appellate court. *M.S. v. C.S.,* 938 N.E.2d 278, 285 (Ind.Ct.App. 2010). However, a claim waived by a party's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Delarosa v. State,* 938 N.E.2d 690, 694 (Ind.2010). This fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* (quoting *Brown v. State,* 929 N.E.2d 204, 207 (Ind.2010), *reh'g denied* ).

With respect to determining whether an error is fundamental, we find our Opinion

in *Mariscal* particularly instructive. There, the trial court administered an oath to the interpreter but failed to inquire into the interpreter's qualifications. *Mariscal,* 687 N.E.2d at 382. Mariscal did not object to the procedure the trial court used to appoint the interpreter, and one of Mariscal's attorneys affirmatively consented to the interpreter. *Id.* On appeal, we held that where a defendant fails to object to the use of an interpreter and also affirmatively consents to the interpreter, there is not "fundamental error," and any subsequent objections to the procedure used to appoint the interpreter are waived. *Id.*[1]

█ Similarly, we have found that a party that does not object to an expert's qualifications at trial or to a trial court's failure to administer an oath to a witness waives those issues for appeal. *Clark,* 580 N.E.2d at 712; *Griffith v. State,* 898 N.E.2d 412, 414–15 (Ind.Ct.App.2008). Although neither of those precedents is directly on point here, we consider them relevant because Evidence Rule 604 declares that interpreters are subject to the rules qualifying experts and administering oaths. Therefore, based on our interpretation of *Mariscal* in conjunction with *Clark* and *Griffith,* we conclude that a failure to establish the qualifications of an interpreter or a failure to administer an oath is not a fundamental error.

In addition, Mother does not allege the "substantial harm" necessary to implicate a fundamental error. *See Delarosa,* 938 N.E.2d at 694. Before trial, Mother told the trial court that she was willing to proceed without an interpreter. The trial court provided an interpreter in spite of Mother's statement because it was "just a matter of phoning" and "easy to do." (Transcript pp. 4–5). Also, although there was evidence that the interpreter at times could not hear the trial, the interpreter asked for clarification each time that a misunderstanding occurred or the interpreter could not hear.[2] Moreover, many of the "difficulties" related to the volume or placing of the speakers, not to translation problems. The trial court addressed the speaker issues each time that the interpreter had a question, and Mother does not indicate that there were any subsequent inaccuracies in the interpreter's translations. Accordingly, we conclude that the trial court's errors were not fundamental.

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when it failed to administer an oath to Mother's interpreter and failed to establish that the interpreter was qualified; we also find, though, that Mother waived her objections by failing to raise them at trial.

Affirmed.

NAJAM, J. and MAY, J. concur.

█

---

1. We recognize that Mother's attorney did not affirmatively consent to the interpreter here, but we nevertheless find *Mariscal* persuasive.

2. Mother points us to *Mendez,* in which we found that there was no fundamental error because "the trial proceeded in an orderly manner [and] ... [t]here were few instances in which the interpreter asked the witnesses to repeat themselves." *Mendez v. State,* 904 N.E.2d 730, *2 (Ind.Ct.App.2009). However, we do not find *Mendez* persuasive as it was an unpublished opinion.