Johnny WISE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0108–CR–277.

Court of Appeals of Indiana.

Feb. 11, 2002.

P. Stephen Miller, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott A. Kreider, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Johnny Wise was convicted following a jury trial of child molesting, as a Class C felony. He was sentenced to the Indiana Department of Correction for five years. He now appeals his conviction. We affirm.

### Issues

Wise raises two issues for our review, which we restate as follows:

1. Whether the State presented sufficient evidence to support his conviction for child molesting as a Class C felony; and

2. Whether the trial court erred in refusing to permit his counsel to exercise a peremptory challenge.

### Facts and Procedural History

The facts most favorable to the conviction reveal that sometime in the winter of 1999–2000, ten-year-old L.S. fell asleep on the couch in her home. Wise was L.S.'s mother's boyfriend and he lived in the home with L.S., her mother, and her two brothers. Sometime during the night, L.S. awoke to find Wise on the couch behind her and his hand underneath her clothes rubbing her vagina. She turned and saw that his eyes were closed. She pulled his hand out from under her clothes and got up to go to her room. Wise asked her what she was doing and asked that she scratch his back. L.S. did not do so, and went to her room. The next morning, L.S. told her mother what had happened. When L.S.'s mother confronted Wise, he apologized and said he had been sleeping. L.S.'s mother asked Wise to move out of the home.

Wise was subsequently charged with child molesting as a Class C felony and his case was set for jury trial. During voir dire, after questioning the initial panel of prospective jurors, the court struck two jurors for cause, the State used two peremptory challenges, and the defense used three peremptory challenges. The remainder of that panel was accepted by all parties. The accepted panel included Juror 10.[1] Thereafter, the State began questioning a second round of prospective jurors. During the State's questioning, defense counsel requested and was granted permission to approach the bench and expressed that he had intended to excuse Juror 10 after the first round of questioning but had inadvertently failed to do so. The court allowed questioning of the second round of jurors to conclude and then resumed discussion of the defense's wish to excuse Juror 10. The court noted that Juror 10 was not excusable for cause, and disallowed Wise's late use of a peremptory challenge to excuse Juror 10. Juror 10 served on Wise's jury.

Wise was found guilty as charged, and the trial court entered judgment of conviction and sentenced Wise to the Indiana Department of Correction for five years. Additional facts will be provided as necessary.

### Discussion and Decision

#### I. Sufficiency of the Evidence

##### A. Standard of Review

■ Our standard of review for sufficiency claims is well settled. We will not reweigh the evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Farris v. State*, 753 N.E.2d 641, 647 (Ind.2001).

---

1. Juror 10 is also referred to as Juror 515 in the appellate materials. Apparently, "515" was the juror's designation for jury duty purposes in general; "10" was his designation for purposes of seating him for this particular case. Because he was referred to as "Juror 10" throughout the relevant discussions during the voir dire proceedings, we shall refer to him as "Juror 10," as well.

## B. Evidence of Intent

■ The charging information filed against Wise alleges that:

Sometime between the period of time between the 25th day of December, 1999 and the 15th day of May, 2000, in the County of Allen and in the State of Indiana, said defendant, Johnny Wise, did perform or submit to fondling or touching with [L.S.], a child who was then under fourteen (14) years of age, with the intent of arousing the sexual desires of [L.S.] or Johnny Wise.

Appendix at 18. The statute defining the crime of child molesting reads, in pertinent part, as follows:

A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.

Ind.Code § 35–42–4–3(b). Wise alleges that the State did not prove by sufficient evidence his intent to arouse his or L.S.'s sexual desires.

■ The element of intent of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. *Cruz Angeles v. State,* 751 N.E.2d 790, 797 (Ind.Ct.App.2001), *trans. denied.* "The intent to arouse or satisfy sexual desires may be inferred from evidence that the accused intentionally touched a child's genitals." *Lockhart v. State,* 671 N.E.2d 893, 903 (Ind.Ct.App.1996).

L.S. testified at Wise's trial that she fell asleep alone on the couch in her family's home watching television. When she awoke, Wise was on the couch with her and his hand was under her shorts and underpants, touching her vagina. She testified that he was moving his hand. She moved his hand and got up from the couch, and Wise asked her to scratch his back. L.S. did not do so, and she went to her room. The next morning, she told her mother what had happened.

Wise contends that because the touching did not lead to any other physical contact, because he did not threaten or warn L.S. not to tell anyone what had happened, and because L.S. did not seem to be afraid or traumatized by the experience, the evidence is insufficient to establish intent to gratify sexual desires. We disagree. We have found sufficient evidence to support a finding of touching with intent to satisfy sexual desires where a defendant put his arm around the shoulder of a child and let his hand hang, touching her breast, and where he placed his hand on the shoulder of another child and then on her breast. *Pedrick v. State,* 593 N.E.2d 1213, 1220 (Ind.Ct.App.1992). We have found sufficient evidence to support a finding of touching with intent to satisfy sexual desires where a defendant touched a child's breasts over her t-shirt eight to twelve times. *Cruz Angeles,* 751 N.E.2d at 798. Wise rubbed L.S.'s vagina. The natural and usual sequence to which such action points is gratification of sexual desires. That nothing further happened between Wise and L.S. is largely due to L.S.'s actions in removing Wise's hand and leaving the couch. Moreover, the crime was complete when Wise rubbed L.S.'s vagina. We need not infer that anything further was intended to happen. The evidence was sufficient to support Wise's conviction.

## II. Jury Selection

### A. Standard of Review

■ Whether to excuse a juror for cause rests within the sound discretion of the trial court, and we will sustain the trial

court's decision unless it is illogical or arbitrary. *Joyner v. State,* 736 N.E.2d 232, 238 (Ind.2000). The right of an accused to peremptory challenges is granted by Indiana Code § 35–37–1–3. However, the general rule is that the right to challenge peremptorily is subject to reasonable regulation by the court. *Marsh v. State,* 272 Ind. 178, 180, 396 N.E.2d 883, 885 (1979).

### B. Late Challenge to Juror 10

At the beginning of voir dire, the trial court impaneled twelve prospective jurors. Juror 10 was among that initial panel of twelve. The court asked a series of questions of all prospective jurors, and then turned the panel over to the State and the defense, respectively. The colloquy between counsel and the trial court regarding the jurors at the close of questioning is as follows:

Court: Okay, let's take care of cause. (Unintelligible words.)

[Defense]: Okay.

[State]: (Unintelligible words.)

Court: Okay. So, [State], you're taking 9 and 12. 9, 4, and 6. He's taking 9, 4, and 6. So he used three, two [State].

[State]: Just two.

Court: You used two, he used three.

[State]: Okay. I just want to make sure.

[Defense]: I want to make sure too cause I'm not exactly sure.

Court: Okay. I show defense struck number 4 and number 6.

[Defense]: Okay.

Court: And number 9. And then the State struck number 12.

[Defense]: Okay.

Court: And number 9. So that means we all like number 1, 2, 3, 5, 10, and 8. Right?

[Defense]: That's right.

Court: It's been so long since I've done a twelve person jury, I forget these extra people.

[Defense]: And 7?

Court: 7 was took [sic] for cause.

[Defense]: Got it.

Court: So two for me, two for the State, three for the Defense.

[Defense]: Okay.

Trial Transcript 65–66. The trial court then excused those jurors who had been excused for cause or challenged by the parties and stated to those remaining: "[T]he six of you remaining in the jury box have been selected to serve. The attorneys are not allowed to ask you any more questions...." Trial T. 67. The court then seated six more prospective jurors, and before any questioning began, the defense asked to approach and indicated that he had failed to ask if the State had a race neutral reason for striking juror 12 from the initial panel. The State gave its explanation, apparently to the satisfaction of the defense. The court then questioned the new panel. In the middle of the State's questioning of the new panel, the defense again asked to approach the bench, whereupon the following discussion was held:

[Defense]: Judge, I looked back to check things off. I had excused Juror [10], I had it for cause here and I crossed that out cause I didn't have him. But that was juror number 10, and I missed it, and I apologize, but I missed it, but it was there. And I can tell you exactly the reason why from the questionnaire, and I had it marked down.

* * *

[Defense]: ... I can tell you exactly why I had it. Tell you, the reasons I had it for cause because he is diabetic and that type of thing and I really question that. I knew I couldn't get him for cause after that. I left it there because as a practical matter, his questionnaire

points out that criminals are treated too lenient, I mean, (unintelligible words.)

[State]: That's a sentencing issue not a (unintelligible word) of guilty issues.

[Defense]: Well, I understand the issue, I understand the mentality too.

Court: Okay . . .

[State]:—Just for the record I would note that both sides accepted the balance, that we went through and we marked them out and obviously, whatever the Court deems appropriate (unintelligible words.)

[Defense]: I mean, that's true, I said I accept the balance because I was thinking all those were done, are done.

Court: Yeah, but then we went through and said, we all like number 1, number 2 and number 3, 5, 8, 10.

[Defense]: I know. And the way I was up here with my, I mean, that was really squished, I'm not . . . I was going to go over her and I didn't.

Court: Okay. Can, I mean, I don't want to let him go right this second, because that's what I'm going to do. I understand this and I appreciate your approaching now. Why don't we get through our second round and when you approach for strikes on round two, discuss it again, that juror, number seated in 10.

[Defense]: Thank you.

Trial T. 74–76. The parties concluding their questioning of the second panel of prospective jurors and made their strikes with respect to that panel. The court and the parties then resumed their discussion of Juror 10:

Court: . . . We need to resume our discussion about number 10. Is there anything else you wanted to argue [Defense]?

[Defense]: No Judge, I've said it just the way it is.

Court: Okay. [State]?

[State]: No, Your Honor.

Court: Well, hopefully, she's going to tell us, don't (unintelligible words.) I guess, you know, it's a discretionary call, I looked at his questionnaire again to make sure it wasn't something that jumped out screaming at me, and nothing did. I try to be really cautious during jury selection, make sure that we all are on the same page before counsel leaves the bench. I did the same thing this round that I did before, making sure that we all accept, and that would've been the time to accept him. So, I'll show, obviously, you're objecting to that. You're asking that he be removed on peremptory.

[Defense]: Did you note on the questionnaire what he said about criminals being treated too easily.

Court: Yes. That the justice system . . . too easy on criminals and sentences for serious crimes aren't severe enough.

* * *

[Defense]: Okay. Obviously, you've shown my objection . . .

Court:—Yes . . .

[Defense]:—and I tried to correct the error as soon as I could, that's all can tell you.

Trial T. 92–94. Wise contends that the trial court improperly denied him the right to exercise his peremptory challenges.

We note first that if there is a local rule in Allen County regarding the selection of a jury and the exercise of challenges, it appears neither in the record nor in the Allen County Local Rules printed in the Indiana Rules of Court. However, Wise states in his brief that he "does not claim ignorance of the local procedure that establishes that once both parties have had the opportunity to question the proposed jurors and the respective strikes have been

exercised, then any juror accepted would not be subject to challenges and would ultimately be impaneled." Brief of Appellant at 3 n. 1. It is therefore apparent that whether or not the local procedure was written, it was known to all parties.

Although Wise couches his issue in terms of his right to use his peremptory challenges, it appears that Wise first argued that Juror 10 should be excused for cause. When his counsel first approached the bench, he noted that he had Juror 10 excused for cause because of an answer on his juror questionnaire. When the discussion was resumed after questioning of the second panel of prospective jurors was completed, the court noted that it had reviewed Juror 10's juror questionnaire and did not see anything therein which would justify striking Juror 10 for cause. Although Juror 10 had stated on his questionnaire that he felt "the justice system is too easy on criminals and sentences for serious crimes are not severe enough," Trial T. 94, he also stated under questioning during voir dire that, as he sat there without having yet heard any evidence, he would say that Wise was not guilty. His answers during voir dire did not indicate any particular bias toward Wise or a predisposition to find him guilty. Thus, the trial court's refusal to excuse Juror 10 for cause was not illogical or arbitrary, and was a determination within the trial court's discretion.

To the extent Wise attempted to then strike Juror 10 with a peremptory challenge,[2] we note that our supreme court has stated that it is "perfectly reasonable for the trial court to require the defense to exercise its peremptory challenge ... immediately after having heard the examination ... by the State and having had an opportunity to do the same." *Marsh*, 272 Ind. at 180–81, 396 N.E.2d at 885–86. In *Marsh* and also in *McBrady v. State*, 459 N.E.2d 719 (Ind.1984), our supreme court held that the trial court properly refused additional peremptory challenges after the parties were given an opportunity to examine prospective jurors, witnessed the examination by the opposing party, and made their challenge pursuant to local court rule. *Marsh*, 272 Ind. at 180, 396 N.E.2d at 885, *McBrady* at 722. Wise had that opportunity here. His attempts to distinguish *Marsh* on the basis that in *Marsh*, counsel did not attempt to correct his error in failing to strike a juror on the first panel until questioning of the second panel was completed are not well taken. In both cases, jurors were struck from the first panel, the remaining jurors were accepted, a second panel of jurors was seated and questioned before counsel indicated that he wished to exercise a peremptory challenge to a juror on the first panel. It is irrelevant at what point in the questioning of the second panel the issue was broached, as the true turning point is when the remaining jurors from the first panel were accepted by the parties. In both *Marsh* and this case, the first panel had been accepted before counsel made his challenge.[3] The trial court did not abuse

---

2. We are not entirely convinced that Wise ever attempted to exercise a peremptory challenge, as even after the trial court noted that there was not cause to excuse Juror 10 and stated, "[y]ou're asking that he be removed on peremptory," counsel stated, "[d]id you note on the questionnaire what he said about criminals being treated too easily." Trial T. 93. This strikes us as a continued challenge to the trial court's decision not to remove Juror 10 for cause.

3. Wise notes that the trial court stated during the first discussion regarding Juror 10 that "I don't want to let him go right this second, because that's what I'm going to do," and he alleges that this manifested the trial court's intent to excuse Juror 10. Wise fails to note, however, the trial court ended that first dis-

its discretion in reasonably regulating the selection of the jury by denying Wise's late application to exercise a peremptory challenge to Juror 10 after he had already been accepted.[4]

### Conclusion

There was sufficient evidence of Wise's intent to arouse either his or L.S.'s sexual desires by his actions, and therefore, sufficient evidence to support his conviction. The trial court did not err in refusing to excuse a juror after he had been accepted by all parties and seated on the panel. Accordingly, Wise's conviction is affirmed.

Affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in result and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in result in part and dissenting in part.

I agree with the majority that the evidence is sufficient to prove that Wise had the requisite intent for the conviction. However, I respectfully disagree with the majority in its reliance upon *Pedrick v. State*, 593 N.E.2d 1213 (Ind.Ct.App.1992) as authority for our holding. (See *id.* at 1223 (Sullivan, J., dissenting)).

As to the denial of defendant's peremptory challenge, I respectfully dissent. In the case before us, counsel for defendant clearly wished to excuse the juror who had indicated that he thought the criminal justice system was too easy on criminals and on sentences for serious crimes. However, when counsel apparently decided that a challenge for cause would not be successful, counsel inadvertently failed to exercise a peremptory challenge as to that juror and accepted him.

When the second round of questioning began with respect to the six newly-impaneled prospective jurors, defense counsel realized his error as to Juror 10 and so advised the court. The court stated that they would proceed with that second round of questioning and then would revisit the matter as to a peremptory challenge of Juror 10, because she did not "want to let him go right this second, because that's what I'm going to do." Transcript at 76. This exchange indicated that at the subsequent time the peremptory challenge would be permitted. However, the court apparently changed her mind and chose to enforce the local rule.

I think it important to note that only the first round of questioning of the panel had been completed. The voir dire process for impaneling the jury had not been completed. Defendant had not used all available peremptory challenges. No prejudice or undue delay would have been occasioned either to the State or to the Court. The situation is closely akin to that of a trial

cussion by saying that "when you approach for strikes on round two, [we'll] discuss it again...." Trial T. 76. It is apparent from the context of the entire discussion that the trial court had not determined a course of action at that time and was not merely awaiting a more advantageous time to excuse the juror.

4. Wise also contends that the trial court's inquiry into the reasons for the challenge was improper "control" of his exercise of a peremptory challenge, rather than merely reasonable regulation of the challenge. *See Shields v. State*, 523 N.E.2d 411, 413 (Ind. 1988) ("A peremptory challenge is one exercised without reason stated, without inquiry, and without being subject to the court's control. No party is required to explain its reasons for the exercise of such challenge."). However, as we have noted above, it appears that the trial court first analyzed the challenge to Juror 10 as a challenge for cause, in which case inquiry into the reasons is clearly appropriate.

court ruling made *in fieri* and which is subject to modification or recall.

Under the circumstances present here, which were not presented in either *Marsh v. State*, 272 Ind. 178, 396 N.E.2d 883 (1979) or *McBrady v. State*, 459 N.E.2d 719 (Ind.1984), rigid application of the local rule which gives finality to an inadvertent and preliminary acceptance of a certain member of the panel constitutes an abuse of discretion.

I would reverse and remand for a new trial.