Antonio AGILERA, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0604–CR–355.

Court of Appeals of Indiana.

March 7, 2007.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, attorneys for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Antonio Agilera (Agilera), appeals his conviction for child molesting, a Class C felony, Ind.Code § 35–42–4–3.

We affirm.

### ISSUES

Agilera raises three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting statements by child victim, K.E.;

(2) Whether the State presented sufficient evidence to sustain Agilera's conviction for child molesting; and

(3) Whether the trial court abused its discretion by denying Agilera's Motion for Mistrial.

### FACTS AND PROCEDURAL HISTORY

Seven-year-old K.E. lived with her mother, Amanda, father, Maudell, two younger sisters, grandmother, Tracy Stiltner (Stiltner), and, Stiltner's boyfriend, Agilera, in Indianapolis, Indiana. On May 1, 2005, between the hours of 4:00 and 5:00 in the morning, Agilera returned home after a night of drinking. He woke up Stiltner, took her into their bedroom, engaged in intimate relations, and then went to bed.

Stiltner woke up between 9:00 and 10:00 that morning and made breakfast for Agilera and K.E. and her sisters. After breakfast, Stiltner fixed the television in their bedroom. Agilera wanted Stiltner to lie down with him, but she told him she needed to wash the breakfast dishes. K.E. was in the bedroom with Agilera when Stiltner returned to the kitchen. Agilera asked K.E. to lock the bedroom door. She refused. Agilera locked the door himself, and then pulled down his pants and pulled K.E.'s pants and underwear down around her ankles. Agilera laid down on his bed with his feet on the ground and lifted K.E. on top of his exposed groin area.

In the meantime, Stiltner finished washing the dishes and returned to Agilera and her bedroom to find the door was locked. When she unlocked the door, she witnessed Agilera on his back with K.E. on his groin with her pants and underwear around her ankles. Stiltner exclaimed, "Oh my God, what are you doing?" (Transcript p. 65). Agilera sat up and lifted K.E. off him, putting her on the floor between his legs. Stiltner told K.E. to pull up her pants. Agilera helped K.E. get dressed. Stiltner told K.E. to come to her and picked up K.E. Stiltner walked toward Agilera and noticed his pants were undone and saw his penis was exposed. Stiltner started to leave the bedroom, but Agilera grabbed her. Stiltner called for Amanda to come get K.E. and told her what had happened to K.E. She pulled away from Agilera and left the bedroom. K.E. was crying and kept repeating that Agilera "made her do it," and "it wasn't her fault." (Tr. p. 67–8, 97).

In Amanda's bedroom, Amanda removed K.E.'s pants and underwear to check for injuries. She noticed K.E.'s vaginal area was red. K.E. then told Amanda that Agilera wanted her to lock the bedroom door, but she said no, so he got up and locked the door himself. Then, after he locked the door he told her to take off her pants and underwear and made her get on

top of him. Amanda telephoned her husband and told him to come home. She also called the police and reported the incident.

Several police officers came to the home, as well as Detective Peter Buttram (Detective Buttram). Detective Buttram questioned K.E. Although she relayed the incident to him, she was very hesitant and distracted, and had trouble answering his questions. Detective Buttram made an appointment for a child forensic interviewer to interview K.E. the next day. After the police left, K.E. was examined at Riley Children's Hospital for sexual assault. Swabs were taken of K.E.'s vaginal area and of her underwear for DNA testing. Agilera's DNA was found on the swabs and on K.E.'s underwear. The next day Detective Buttram witnessed the interview with the child forensic interviewer, and said K.E. was still scared and unable to describe much of what Agilera did to her.

On May 3, 2005, the State filed an Information charging Agilera with Count I, child molesting, a Class C felony, I.C. § 35–42–4–3. The State later amended the Information to include Count II, child molesting, a Class C felony, I.C. § 35–42–4–3. On September 1 and 22, 2005, the trial court conducted hearings pursuant to I.C. § 35–37–4–6(e)(1) regarding whether statements made by K.E. to her mother, grandmother, Detective Buttram, and the forensic interviewer would be admissible after she testified and was subject to cross-examination at trial. The trial court decided all four statements were admissible. Prior to trial Agilera filed a motion *in limine* to avoid all testimony concerning his prior arrests and convictions, which the trial court granted.

On March 7 and 8, 2006, a jury trial was held. On the first day of trial, Stiltner testified that Agilera had been in jail. Agilera moved for a mistrial. The trial court denied Agilera's Motion and on March 8, 2006, was found guilty of Count I, child molesting, and not guilty of Count II, child molesting.

Agilera now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Out–of–Court Statements*

First, Agilera argues the trial court abused its discretion by admitting out-of-court statements made by K.E. to her mother, grandmother, Detective Buttram, and the forensic interviewer. Particularly, Agilera claims (1) the statements did not meet the admissibility requirements of I.C. § 35–37–4–6, the protected persons statute, and (2) his Sixth Amendment United States Constitutional rights were violated due to a lack of meaningful cross-examination regarding K.E.'s statements.

### A. *Standard of Review*

In general, the decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal. *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind.Ct.App. 2003). We will not reverse the trial court's decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial. *Id.* An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.* at 703. At the same time, the protected person statute impinges upon the ordinary evidentiary regime such that we believe a trial court's responsibilities thereunder carry with them what we called in another context "a special level of judicial responsibility." *Id.* (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind.1999)).

## B. *History*

Initially, it is important to clarify the relationship between *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and evidentiary principles established by rule and statute. *Crawford* overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that hearsay statements made by an unavailable witness were admissible against a criminal defendant if the statement fell "within a firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531. In the wake of *Roberts,* many states, including Indiana, enacted statutes that set forth criteria establishing reliability as a matter of law. *See Purvis v. State,* 829 N.E.2d 572, 582 (Ind.Ct.App.2005), *trans. denied; see also, e.g.,* I.C. § 35–37–4–6. Then, in *Crawford* the Supreme Court required that testimonial out-of-court statements be admitted in a criminal trial only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford,* 541 U.S. at 68–69, 124 S.Ct. 1354.

While the Supreme Court did not expressly define testimonial out-of-court statements in *Crawford,* it provided guidance—testimonial evidence was understood to include prior testimony at preliminary hearing, testimony before a grand jury, or at a former trial, and statements elicited during police interrogations. *Id.* at 51, 124 S.Ct. 1354. Recently, in *Davis v. Washington,* —— U.S. ——, ——––——, 126 S.Ct. 2266, 2273–74, 165 L.Ed.2d 224 (2006), the Supreme Court clarified further that statements are "testimonial when the circumstances objectively indicate that there is no [ ] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

## C. *Protected Person Statute*

The Indiana General Assembly enacted the protected person statute, I.C. § 35–37–4–6, setting forth a detailed set of conditions under which evidence that is not otherwise admissible will be allowed in cases involving crimes against children and individuals with certain disabilities. I.C. § 35–37–4–6 states, in relevant part:

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person;

that the time, content, and circumstances of the statement or videotape provided sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or . . . .

Thus, for the trial court to admit K.E.'s statements in this case, the court must, after a hearing attended by K.E., find "that the time, content, and circumstances of [her] statement[s] . . . provide sufficient indications of reliability" and that she will testify at trial or be unavailable to testify for any of several reasons as defined in the statute. *Purvis,* 829 N.E.2d at 582.

When a child is called to testify at trial, the trial court has the discretion to determine if a child witness is competent based on the court's observation of the child's demeanor and responses to questions posed by counsel and the court. *Richard v. State,* 820 N.E.2d 749, 754 (Ind. Ct.App.2005), *trans. denied.* A child's competency to testify at trial is established

by demonstrating that he or she (1) understands the difference between telling a lie and telling the truth, (2) knows he or she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *Id.* at 775. Here, the trial court determined that "K.E. was able to demonstrate that she understands the difference between the truth and a lie; that she is able to identify a true statement; that she understands that there are consequences for lying; and that she understands what it means to promise to tell the truth." (Appellant's App. pp. 90, 91).

█ Next, the trial court determined K.E.'s statements to her mother, grandmother, Detective Buttram, and the forensic investigator were "sufficiently reliable to admit them at trial." (Appellant's App. pp. 88, 89, 90). Considerations in making the reliability determination under I.C. § 35–37–4–6 include (1) the time and circumstances of the statement, (2) whether there was significant opportunity for coaching, (3) the nature of the questioning, (4) whether there was a motive to fabricate, (5) use of age appropriate terminology, and (6) spontaneity and repetition. *Trujillo v. State*, 806 N.E.2d 317, 325 (Ind. Ct.App.2004). Lengthy and stressful interviews or examinations preceding the statement may cast doubt on the reliability of the statement or videotape sufficient to preclude its admission. *Id.* Specifically, the trial court's findings were as follows:

> ... [T]he [c]ourt finds that the statements K.E. made to her mother, Amanda [ ], in her initial disclosure are sufficiently reliable to admit them at trial. K.E.'s statements were made close in time to the alleged molestation, that is, mere minutes after the incident, and there was no opportunity for coaching. There was nothing suggestive in the nature of the questioning by [Amanda]. In fact, K.E.['s] spontaneous utterance that "he made me do it" was unprompted. There is no indication that K.E. had any motive to fabricate. There is no indication of implantation or cleansing. When talking with [Amanda], K.E. used age-appropriate language. She even used the term "butt" to refer to vagina. [Amanda] originally misunderstood the meaning of the term as used by her daughter. Finally, K.E. was not subjected to stressful interviews or examinations preceding her statement to [Amanda].

* * *

> ... [T]his [c]ourt finds that the statements K.E. made to her grandmother, [ ] Stiltner, are sufficiently reliable to admit them at trial. Her statements were immediately after the alleged molestation. There was no opportunity for coaching. The statement K.E. made to Stiltner was made around the same time K.E. was disclosing to her mother, Amanda [ ]. There was nothing suggestive in the nature of the questioning. There is no evidence that K.E. had any motive to fabricate. K.E. used age appropriate language in her disclosure to Stiltner. She used the term "butt" to refer to vagina; a reference that Stiltner did not initially understand. K.E. was not subject to stressful interviews or examinations preceding her statement to Stiltner. Most notably, the [c]ourt finds that the child's statements are corroborated by the testimony of Stiltner who walked in on the child and [Agilera] and saw [Agilera's] pants unzipped and part of his penis exposed.

* * *

> ... [T]his [c]ourt finds that the statements K.E. made to [Detective Buttram] on May 1, 2005[,] are sufficiently reliable to admit them at trial. First, K.E.'s

statements were made within hours after the alleged molestation. There was not a significant opportunity for coaching. There was nothing suggestive in the nature of the questioning although [Detective Buttram] described K.E. as appearing "a little intimidated" by the process as reflected by the child's tentative and incomplete responses. However, the [c]ourt believes this was as a result of the surrounding circumstances involving the presence of distraught family, various external distractions, and the lack of privacy during the interview rather than any improper tactics used by [Detective Buttram]. There is no evidence that K.E. had any motive to fabricate. K.E. used age appropriate language in her disclosure to Detective Buttram. Again she used the term "butt" to refer to vagina. Although she seemed distracted and was incomplete in her disclosure, the statement made by K.E. to Detective Buttram repeated information she had already disclosed. K.E. disclosed both incidents in the bathroom and the bedroom, as well as the fact that she had been touched on the "butt". K.E. was not subjected to stressful interviews or examinations preceding her statement to Detective Buttram. When [Detective Buttram] sensed the child was becoming too intimidated by the process he wisely ended the interview instead of pressing her for further information.

\* \* \*

... [T]his [c]ourt finds that the statements K.E. made to [the forensic interviewer] on May 2, 2005[,] are sufficient[ly] reliable to admit them at trial. K.E.'s statements were made the day after the alleged incident. There was not a significant opportunity for coaching. After the initial disclosure the previous day, neither [Amanda] nor Stiltner questioned K.E. any further about the

molestation prior to her interview at the Child Advocacy Center. The nature of the questioning by [the forensic interviewer] confirms the reliability of the statement. The questions were not suggestive of particular responses. Due to the anxiety K.E. was exhibiting during the interview, direct questions were used. There is no indication that K.E. had any motive to fabricate. In fact, K.E. indicated to [the forensic interviewer] that if she told what happened to her, she feared she would get in trouble. However, despite these initial reservations K.E. chose to disclose what took place. When talking with [the forensic interviewer] K.E. used age-appropriate language and used terms consistent with her prior disclosures as well as terms that K.E. used at the child hearsay hearing. The statements made by K.E. to [the forensic interviewer] repeated information that the child had already disclosed. She discussed the two separate incidents in the bedroom and the bathroom, and she stated she had been touched on the "butt." This is consistent with the sum of her prior disclosures. The anxiety or fear that K.E. initially exhibited during the interview was not the result of the interview conditions but were rather the result of K.E. being told not to talk about what happened to her or she would be punished by her father. After her mother reassured her that she would not get into trouble for speaking with [the forensic interviewer], K.E. was willing to talk about the incidents.

(Appellant's App. pp. 88–90). Thus, we agree with the trial court's findings that K.E.'s statements meet the requisite level of reliability.

### D. Testimonial Nature of K.E.'s Statements

In *Purvis*, this court applied *Crawford* to the protected person statute. We dis-

tinguished statements made to persons for purposes of prosecuting (testimonial statements) from statements made to persons for purposes of gaining information about what happened, finding out if the child was harmed, and remedying that harm (non-testimonial statements). *See Purvis*, 829 N.E.2d at 579–80.

■ Using those guidelines, we determine that K.E.'s statements to her mother and grandmother are not testimonial. Neither K.E.'s mother, nor her grandmother, elicited K.E.'s statements. Rather, as the trial court so aptly concludes, "the statements were made for purposes of gathering information about what happened and finding out if the child was harmed, not in preparation to prosecute." (Appellant's App. pp. 88–89). Thus, the statements to K.E.'s mother and grandmother were non-testimonial in nature per *Crawford*, and do not implicate the Sixth Amendment Confrontation Clause.

■ With respect to K.E.'s statements to Detective Buttram, the trial court correctly found "the statements ... are testimonial in nature under *Crawford* and implicate Sixth Amendment Confrontation Clause issues." (Appellant's App. p. 90). However, because K.E. was found competent to testify, was made available for cross-examination, and did in fact testify at trial, her testimonial statements are admissible. As well, K.E.'s statements to the forensic investigator were testimonial in nature as the interview was conducted at the request of law enforcement for the primary purpose of establishing or proving past event potentially relevant to a later criminal prosecution. *See Davis*, 126 S.Ct. at 2273–74. For the same reasons that K.E.'s statements to Detective Buttram were admissible—she was found competent to testify, was subjected to cross-examination, and testified at trial—the trial court found her testimonial statement to the forensic investigator admissible. We agree. Thus, we find Agilera's Sixth Amendment Confrontation Clause rights were not violated and the trial court did not abuse its discretion by admitting K.E.'s statements to her mother, grandmother, Detective Buttram, and the forensic investigator.

## II. *Sufficiency of the Evidence*

■ Agilera next argues the evidence was insufficient to support his conviction. Specifically, he claims the State failed to prove beyond a reasonable doubt (1) the existence of any fondling or touching, and (2) that any fondling or touching occurred with the intent to arouse or satisfy his sexual desires. We disagree.

■ Our standard of review for a sufficiency of the evidence claim is well-settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *White v. State*, 846 N.E.2d 1026, 1030 (Ind.Ct.App.2006), *trans. denied*. We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Id*. The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Id*. A judgment based on circumstantial evidence will be sustained if the circumstantial evidence alone supports a reasonable inference of guilt. *Id*. Additionally, a conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *McCoy v. State*, 856 N.E.2d 1259, 1262 (Ind.Ct.App.2006).

■ Child molesting as a Class C felony is governed by I.C. § 35–42–4–3(b) and provides, "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of

either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." The intent element may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. *Kanady v. State*, 810 N.E.2d 1068, 1069–70 (Ind.Ct.App. 2004).

Our review of the record indicates that Stiltner walked into the bedroom and found K.E. lying on top of Agilera with her pants and underwear around her ankles. Stiltner further noticed Agilera's pants were undone enough to expose his penis. Thus, the touching element of I.C. § 35–42–4–3(b) is sufficiently satisfied by the evidence.

Furthermore, we have previously held, "the intent to arouse or satisfy sexual desires may be inferred from evidence that the accused intentionally touched a child's genitals." *Lockhart v. State*, 671 N.E.2d 893, 903 (Ind.Ct.App.1996); *see also Wise v. State*, 763 N.E.2d 472, 475 (Ind.Ct.App. 2002) (finding sufficient evidence to support a finding of touching with intent to satisfy sexual desires where a defendant put his hand under the shorts and underwear of a child and touched her vagina); *Cruz Angeles v. State*, 751 N.E.2d 790, 797 (Ind.Ct.App.2001), *trans. denied* (finding sufficient evidence to support a finding of touching with intent to satisfy sexual desires where a defendant touched a child's breasts over her t-shirt eight to twelve times); *Pedrick v. State*, 593 N.E.2d 1213, 1220 (Ind.Ct.App.1992), *reh'g denied* (finding sufficient evidence to support a finding of touching with intent to satisfy sexual desires where a defendant put his arm around the shoulder of a child and let his hand hang, touching her breast, and where he put his hand on the shoulder of another

child and then on her breast). Here, there is no doubt Agilera's actions were anything but intentional. As evidenced by the record, Agilera locked the bedroom door, pulled down his pants, as well as K.E.'s pants and underwear, laid down on his bed, and placed K.E. on top of his exposed groin area. The natural and usual sequence to which such action points is sexual gratification of sexual desires. *See Wise*, 763 N.E.2d at 475. Moreover, the crime was complete when Agilera placed a bared K.E. on top of his exposed groin; we need not infer that anything further was intended to happen. *See id.* We find the evidence sufficient to support Agilera's conviction.

### III. *Motion for Mistrial*

Lastly, Agilera claims the trial court abused its discretion by denying his Motion for Mistrial. Specifically, Agilera contends Stiltner's testimony that she and Agilera lived together until "he went to jail" placed him in such grave peril that an admonition was not a sufficient remedy. (Tr. p. 77). We disagree.

Whether to grant or deny a motion for mistrial is a decision left to the sound discretion of the trial court. *Alvies v. State*, 795 N.E.2d 493, 506 (Ind.Ct.App. 2003), *trans. denied*. We will reverse the trial court's ruling only upon an abuse of that discretion. *Id.* We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Id.* To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on

the jury's decision rather than upon the degree of impropriety of the conduct. *Id.*

■■■ We have recognized that a mistrial is an extreme sanction warranted only when no other cure can be expected to rectify the situation. *Id. Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings because a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement. Id.* (emphasis added).

In the case at bar, the record establishes that Agilera filed a Motion *in Limine* on March 7, 2006. On the same day, the trial court granted Agilera's request to exclude from the jury any reference to his prior criminal history. The record also reflects that later that day during Stiltner's testimony the following exchange took place:

[STILTNER]: ... We took over [my daughter and her husband's] apartment and they moved. We were there probably four months and he went to jail.

[AGILERA'S COUNSEL]: Objection, Your Honor. Could we approach?

[TRIAL COURT]: Yes.

WHEREUPON, THE ATTORNEYS APPROACH THE BENCH TO CONFER OUTSIDE THE HEARING OF THE JURY AS FOLLOWS, TO WIT:

[AGILERA'S COUNSEL]: I'd move to strike. I'd move for an admonition. And I'd move for a mistrial.

[TRIAL COURT]: Okay. Granted, granted, denied. You better focus your (inaudible).

[AGILERA'S COUNSEL]: Okay.

[TRIAL COURT]: All right. Thank you.

WHEREUPON, THE BENCH CONFERENCE ENDS AND THE PROCEEDINGS RESUME.

[TRIAL COURT]: Ladies and gentlemen, that last answer is stricken from the record. Because it is stricken, you are hereby admonished, which means warned, cautioned, ordered that you may not consider that last answer in any way. Next question.

(Tr. p 77). Thus, as we review the same evidence and note that the jury was properly admonished, we conclude that the trial court did not abuse its discretion by denying Agilera's Motion for Mistrial. *See Alvies v. State,* 795 N.E.2d at 506.

### CONCLUSION

Based on the foregoing, we conclude (1) the trial court did not abuse its discretion by admitting K.E.'s out-of-court statements; (2) the State presented sufficient evidence to sustain Agilera's conviction for child molesting; and (3) the trial court did not abuse its discretion when it denied Agilera's Motion for Mistrial.

Affirmed.

KIRSCH, J., and FRIEDLANDER, J., concur.