# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 19 2017, 5:44 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Isabella H. Bravo
Monroe County Public Defender's Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.L.E., <br> *Appellant,* <br><br> v. <br><br> A.D.H., <br> *Appellee.* | July 19, 2017 <br><br> Court of Appeals Case No. <br> 53A04-1612-PO-2901 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Elizabeth A. Cure, Judge <br><br> Trial Court Cause No. <br> 53C04-1610-PO-2012 |

**Bailey, Judge.**

# Case Summary

A protective order against T.L.E. was entered for the protection of A.D.H. and several other persons. A.D.H. filed a petition for rule to show cause, alleging T.L.E. to be in contempt of court for violation of the protective order. After a hearing, the trial court found T.L.E. to be in contempt of court, and ordered T.L.E. to submit to a psychological examination and, subsequently, to engage in a mentoring program. T.L.E. appealed.

We affirm.

# Issues

T.L.E. raises four issues for our review, which we consolidate and restate these as the following three issues:

> I. Whether the trial court relied on evidence outside the record, thereby violating T.L.E.'s due process rights;
>
> II. Whether the trial court abused its discretion when it found T.L.E. in contempt of court for violation of the protective order; and
>
> III. Whether the trial court's contempt sanction can be purged.

# Facts and Procedural History

T.L.E. and A.D.H. both lived in Bloomington and had shared social circles. At some point, the relationship between T.L.E. and A.D.H. soured. This

apparently led to fights between the two women, and to other apparent threats to A.D.H. and her family and friends. A.D.H. subsequently sought a protective order.

On October 19, 2016, the Marion Circuit Court entered an *ex parte* protective order as to A.D.H. and three other individuals. The order barred T.L.E. from "threatening to commit or committing acts of domestic or family violence or stalking" and from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with A.D.H. (App'x Vol. II at 24.) The court's order further enjoined T.L.E. "to stay away from the residence, school and place of employment" of A.D.H. (*Id.*)

On October 31, 2016, A.D.H. filed a petition for contempt, in which she alleged that T.L.E. had violated the protective order. Specifically, A.D.H. alleged that on October 27 and 28, 2016, T.L.E. was present with two of her friends at A.D.H.'s apartment complex. Upon seeing A.D.H. on the morning of October 28, T.L.E. was alleged to have made an obscene gesture toward A.D.H. and her mother, after which T.L.E. got in a cab and started laughing. A.D.H. also alleged that T.L.E. made threatening posts on Facebook, and attached printouts in support of the allegation. A public defender was appointed for T.L.E. on November 1, 2016.

On November 14, 2016, the trial court conducted a hearing on A.D.H.'s petition for contempt; that hearing was recessed and continued to November 21, 2016. During the hearing, T.L.E, A.D.H., A.D.H.'s mother, and several

employees of a local cab company provided evidence and other testimony. On the first day of the hearing, the trial court identified certain facts that it was aware of from prior hearings in the matter, evidence for which facts were presented to the trial court prior to the appointment of a public defender. That day, the trial court stated that it had concluded that A.D.H. had established a *prima facie* claim for violation of the protective order, and ordered T.L.E. to submit to a psychological evaluation. On the second day of the hearing, additional evidence was submitted. At the hearing's conclusion, the trial court found that T.L.E. had violated the protective order, and the court reiterated its instruction that T.L.E. undergo a psychological examination. A written order to this effect was entered on December 6, 2016.

[8] T.L.E. underwent a psychological evaluation on December 12, 2016. The psychologist filed a report with the court on December 14, 2016, and filed a revised report on December 16, 2016. T.L.E. filed a notice of appeal on December 19, 2016. On December 22, 2016, the trial court entered a second order of contempt, which ordered T.L.E. to engage in a mentoring program. The court observed that the most likely source of mentoring personnel, Indiana University, was closed at that time, and therefore delayed further action on the matter until after classes resumed at the university.

[9] This appeal ensued.

# Discussion and Decision

## Standard of Review

[10] T.L.E. appeals the trial court's order finding her to be in contempt of court, and identifies numerous issues for our review. Each of these issues—the trial court's conformance to due process requirements in light of its use of evidence, the sufficiency of the evidence underlying the contempt order, and the propriety of the sanction imposed—is ordinarily subject to appellate review for an abuse of discretion. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012) (setting forth the standard of review for contempt findings); *Barnhart v. State*, 15 N.E.3d 138, 143 (Ind. Ct. App. 2014) (setting for the standard of review from evidentiary rulings). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it, or when the court errs on a matter of law. *Agilera v. State*, 862 N.E.2d 298, 302 (Ind. Ct. App. 2007), *trans. denied*.

[11] In this case, we note that A.D.H. did not file an appellee's brief. Accordingly, our standard of review is modified so that we will reverse upon a showing of prima facie error. *A.S. v. T.H.*, 920 N.E.2d 803, 805 (Ind. Ct. App. 2010). Prima facie error is defined as error " 'at first sight, on first appearance, on the face of it.' " *Id.* (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). When the appellant cannot meet this burden, we will affirm. *Id.* at 806. The purpose of this rule "is intended to relieve this court of the burden of controverting the arguments advanced for reversal where this burden rests

with the appellee." *AmRhein v. Eden*, 779 N.E.2d 1197, 1206 (Ind. Ct. App. 2002).

[12]     T.L.E.'s arguments throughout rely upon our indirect contempt statute. The Indiana Code provides:

> A person who is guilty of any willful disobedience of any process, or any order lawfully issued:
>
> (1) by any court of record, or by the proper officer of the court;
>
> (2) under the authority of law, or the direction of the court; and
>
> (3) after the process or order has been served upon the person;
>
> is guilty of an indirect contempt of the court that issued the process or order.

Ind. Code § 34-47-3-1. A person charged with indirect contempt of court is entitled to service of process of a rule to show cause, which must set forth the facts alleged to constitute contempt, specify the time and place of the facts with reasonable certainty, and specify a time and place for where the person must show cause why contempt should not attach. I.C. §§ 34-47-3-5(a) & (b). Upon a proper showing at the time and place at which a person must show cause, the court shall give the person "a reasonable and just opportunity to be purged of the contempt." I.C. § 34-47-3-5(c). If a person accused of contempt "does not sufficiently deny, explain, or avoid the facts set forth in the rule, so as to show that no contempt has been committed, the court may proceed to attach and

punish the defendant for contempt" by means of a fine, imprisonment, or both. I.C. § 34-47-3-6(c). A defendant who appears to respond to the rule to show cause may appeal in the same manner as in cases of direct contempt, set forth in Indiana Code section 34-47-2-5. I.C. § 34-47-3-6(d).

## Use of Evidence

[13] T.L.E.'s first argument on appeal claims that the trial court abused its discretion when, during the hearings on the contempt petition, it relied upon facts known to it prior to the fact-finding hearings on the contempt petition. T.L.E. directs our attention to specific statements by the trial court to support this contention.

[14] T.L.E. contends that the trial court erred when, at the beginning of the hearing, "the trial court 'referred' to records made in other cases, so the Petitioner did not have to repeat her testimony." (Appellant's Br. at 18.) The court stated, "Okay, and I'm going to let, just refer to the, to the record in the other case rather than have her say it all over again." (Tr. at 4.) T.L.E. contends that this was an inappropriate use of judicial notice under Evidence Rule 201, which permits the court to take notice of "the existence of … records of a court of this state," Ind. Evidence Rule 201(a)(2)(C), and of "a law, which includes … records of a court of this state." Evid. R. 201(b)(5). However, T.L.E. argues that given the circumstances of the appointment of counsel—after the filing of a contempt petition, when the records referred to came from other cases—she was "left to guess what these facts were and whether these facts were stated in

witness testimony" such that cross-examination could be conducted. (Appellant's Br. at 19.)

[15]  T.L.E. also catalogs statements by the trial court concerning prior instructions to the parties or prior events in the case.  These include statements like, "I couldn't have been clearer about what she [T.L.E.] needed to do to stay out of trouble" (Tr. at 5), "you're asking me to let [go] the person that's central at every one of these [incidents of threats of violence against A.D.H.]" (Tr. at 22), "She brought her whole gang here every other time" (Tr. at 55), and "They've [T.L.E.'s friends] all been standing there giving me the stink eye for two weeks." (*Id.*)  T.L.E. also brings the trial court's attempts to reconcile dates and times of court proceedings under scrutiny.  In sum, T.L.E. contends that all of this amounted to references to "facts not found otherwise in the record" that prevented T.L.E. from being placed on notice of the time and facts that could constitute contempt of court.  (Appellant's Br. at 21.)

[16]  We find no grounds for reversal here, even under the *prima facie* error standard provided for by our standard of review in the absence of an appellee's brief. T.L.E. at no point objected to any of the trial court's statements.  It is well established that failure to make a contemporaneous objection results in waiver of a contention upon appeal.  *See, e.g.*, *Dilts v. State*, 49 N.E.3d 617, 628 (Ind. Ct. App. 2015) (reiterating the rule that failure to object to specific testimony, "let alone offer an objection that mirrors" an argument upon appeal, resulted in waiver of appellate review).  Having failed to present the question of error to the trial court, T.L.E. cannot now be heard to complain about possible error.

Moreover, our review of the record indicates that the trial court's decision regarding contempt relied on the testimony presented at the hearing, including testimony from A.D.H. and her mother, two cab drivers, the owner of the cab company, and T.L.E.'s mother and stepfather, and the trial court's announced rationale related directly to the question put in issue by A.D.H.'s petition: T.L.E.'s contact with A.D.H. on October 27 and 28, 2016.

[17] With respect to the facts that might constitute contempt, the trial court was clear throughout: the testimony adduced at the hearing was intended to determine the truth of A.D.H.'s claims concerning her interactions with T.L.E. during October 27 and 28, 2016. Indeed, early in the hearing, the trial court stated that A.D.H. had established a prima facie case that T.L.E. had been present during October 27 and 28, and that T.L.E. had personally made an obscene gesture at A.D.H. This included the court stating, "I think it's more likely than not that [T.L.E.] was there. That [A.D.H.] saw her and she flipped her off … she was there and she looked at [A.D.H.] and she gave her the finger and she knew better." (Tr. at 13.) The court even directly told T.L.E., "I believe you were over there giving people the finger." (Tr. at 25.)

[18] We accordingly find that T.L.E. has failed to carry the burden of proving that the trial court's decisions amounted to prima facie error, let alone error implicating her due process rights.

# Sufficiency of the Evidence

[19] T.L.E. also argues that the evidence presented at the hearing was insufficient to prove that she violated the protective order as to A.D.H. T.L.E.'s argument takes on two forms: first, she contends that she simply did not violate the protective order's terms; second, she contends that there was insufficient evidence of willful violation of the protective order.

[20] With respect to the first of these arguments, T.L.E.'s contentions boil down to a reweighing of the evidence. T.L.E. attacks A.D.H.'s credibility as to specific dates, summarizing this argument as "[A.D.H.] did not know what date she allegedly saw the respondent" because of alleged confusion concerning the date of a petition vis-à-vis the date of the incident. (Appellant's Br. at 23.) Nevertheless, A.D.H. consistently identified the incident itself as having occurred on October 27 and 28, 2016. S.H.'s testimony identified October 28, 2016, as the day on which A.D.H. sought a protective order against another person, not the day on which A.D.H. sought a contempt finding against T.L.E. To the extent T.L.E. attempts to cast doubt on A.D.H.'s testimony, we note that in sufficiency challenges "we neither reweigh the evidence nor judge the credibility of witnesses," even upon a claim of *prima facie* error. *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010). We decline T.L.E.'s invitation to reweigh the evidence on this point.

[21] We note as well that T.L.E.'s argument emphasizes her own testimony and that of her witnesses. Here, T.L.E. makes additional arguments concerning the

weight and credibility of the evidence, preferring her own witnesses' statements and their implications. However, the trial court expressly found A.D.H.'s testimony to be credible and did not credit the theory of the case presented by T.L.E.

[22] The same reweighing problems hold true for the contention that there was no willful disobedience of the protective order. T.L.E. makes such arguments as, "[t]here was no order that Respondent was not permitted to be in that [A.D.H.'s] parking lot," and, "There were other people present. The Respondent gestured within the group." (Appellant's Br. at 25.) Yet testimony from A.D.H. and her mother are explicit that T.L.E. was with several other people, and that T.L.E. made an obscene gesture *at* A.D.H. A.D.H. testified, "We just looked over there. They flipped us off, laughed and got in the taxi and left. She didn't say anything. She didn't, all she did was flip off." (Tr. at 12.) A.D.H.'s mother, S.H., testified, "So when they came out [of] the house, they kind of like came at the same time with [T.L.E.] going like this. And her mother just started laughing." (Tr. at 68.)

[23] The protective order by its very terms prohibited any manner of contact with A.D.H. and S.H.; the evidence presented by A.D.H. and S.H. was that T.L.E. directly and intentionally communicated with them. The trial court was free to credit this evidence over that to which T.L.E. directs our attention on appeal. We are not free to reassess this determination, *see Tisdial*, 925 N.E.2d at 785, and we accordingly find no insufficiency of the evidence.

# Whether Contempt Can be Purged

[24] We turn to the last of T.L.E.'s contentions. T.L.E. argues that the trial court's chosen sanction precludes her from purging the contempt associated with violation of the terms of the protective order. "Sanctions in a civil contempt proceeding may seek both to coerce behavior and to compensate an aggrieved party." *Norris v. Pethe*, 833 N.E.2d 1024, 1031 (Ind. Ct. App. 2005). A court may impose a fine, imprisonment, or both. I.C. § 34-47-3-6(c). The purpose of imprisonment is to coerce compliance with the court's order that the contumacious party has violated through prior noncompliance. *Id.* "Penalties designed to compel future compliance with a court order are considered to be coercive and avoidable through obedience." *Id.*

[25] Here, on November 14, 2016, after the first portion of the hearing on A.D.H.'s petition for contempt, the trial court stated that it believed A.D.H.'s claims concerning T.L.E.'s conduct. The court ordered that T.L.E. be "remand[ed]" to the Monroe County Jail pending the completion of a psychological profile, but the court then suspended its order so that T.L.E. could produce witnesses in the proceeding. (Tr. at 26.) After the second part of the hearing, which was conducted on November 21, 2016, the trial court found T.L.E. to be in contempt of court and reiterated its order that she submit to a psychological evaluation. The trial court stated that the reason for ordering the psychological evaluation was to determine whether T.L.E.'s conduct was the result of behavioral or psychological issues (Tr. at 26), and to "get [T.L.E.] psychological help." (Tr. at 87.)

[26] The psychological evaluation was conducted on December 12, 2016. In the meantime, the trial court left the order for incarceration suspended, so that T.L.E. was not incarcerated at any point after November 14, 2016. After the psychological evaluation was completed and submitted to the trial court, the court ordered T.L.E. to participate in a mentoring program. The court noted, however, that the likeliest source for a mentor—Indiana University—was at that time not conducting classes, and thus starting the mentoring program would be delayed until January 2017.

[27] It is this sequence of events—ending with the trial court's order of December 22, 2016—that T.L.E. argues has imposed upon her a contempt sanction that she cannot purge herself of. Specifically, T.L.E. identifies the suspended custody remand order as "indefinite" and the mentoring program as lacking parameters. (Appellant's Br. at 26.) The "indefinite" characterization of the custody remand arose during a conversation between T.L.E.'s counsel and the trial court:

> [COURT]: Um, you're trying to convince me that I made an error when I, um, sentenced her to jail the other day.
>
> [COUNSEL]: Um, and when you say sentenced her, you mean-
>
> [COURT]: -I mean remanded her, okay?
>
> [COUNSEL]: Well, no, no, no, I just mean, um, for, for the purposes of this I'd like to hold her for the purposes of the psychological evaluation. That's what you meant, right?

[COURT]: Yes-

[COUNSEL]: okay-

[COURT]: -when I remanded her to jail for an indefinite period of time until we can get her in compliance, ready to be in compliance with this protective order because I found it more likely than not that she had willfully violated.

(Tr. at 33-34.)

[28] Thus, while the trial court identified the term as "indefinite" on November 21, 2016, that term of imprisonment was imposed and suspended for the duration of the proceedings on November 14, 2016, and was expressly entered "until we can get a psychological profile of [T.L.E.]." (Tr. at 26.) The suspension was subject to revocation if subsequent allegations of T.L.E. violating the protective order were reported to the court pending the second portion of the hearing. (*Id.*) Contrary to T.L.E.'s argument, then, it is not the case that T.L.E. faced an open-ended term of imprisonment for contempt of court with no possibility of purging contempt. Rather, the (ultimately unexecuted) order for imprisonment would last *until* the psychological evaluation was completed, so that the court could determine what remedies to order so that T.L.E. could comply with the protective order—and that term of imprisonment was itself suspended.

[29] With respect to the trial court's order that T.L.E. participate in mentoring, we cannot say that the trial court has imposed an indefinite requirement upon T.L.E. for purging contempt, because it is clear from the order's language that

the sanction was not final—and, again, because T.L.E. was not imprisoned as a consequence of the order. Following the completion of the psychological evaluation, which the trial court made clear was itself an intermediate step toward determining an appropriate contempt sanction, the trial court entered the following order:

> The Court is now in receipt of Dr. Nolen's careful and thoughtful evaluation. In view of his recommendations, the Court will attempt to secure a mentor for [T.L.E.]. [T.L.E.] will then need to cooperate with the mentor in helping her get the assistance she needs to stay in compliance with this Court's Order of Protection. As IU is the most likely source of a mentor and because they are on Winter Break, this process will be on hold until after the first of the year.

(App'x Vol. II at 67.) The mentoring order as entered did not yet constitute a sanction. Further, the suspended sentence is in any event intended to coerce T.L.E. into complying with the protective order, so that it is not punitive. *See MacIntosh v. MacIntosh*, 749 N.E.2d 626, 631-32 (Ind. Ct. App. 2001) (holding that a suspended sentence imposed to coerce a parent's compliance with a parenting time order was not punitive), *trans. denied*. Accordingly, we cannot say that the trial court's sanction is one that is incapable of being purged or that is otherwise purely punitive in nature. We find no abuse of discretion with respect to the trial court's sanction.

# Conclusion

[30] The trial court did not abuse its discretion in the use of evidence, in its finding that T.L.E. was in contempt of court, or in its decision on sanctions.

[31] Affirmed.

Vaidik, C.J., and Robb, J., concur.